**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **ANDREW LYONS,** | 07 Civ. 4597 (VB) (PED) |
| **Petitioner,** | |
| *- against -* | **REPORT AND** |
| | **RECOMMENDATION** |
| **DARWIN LaCLAIRE, Warden, Great Meadow** **Correctional Facility** | |
| **Respondent.** | |

**TO:   THE HONORABLE VINCENT L. BRICCETTI,**
**UNITED STATES DISTRICT JUDGE**

## I. INTRODUCTION

Andrew Lyons ("Petitioner") seeks, by his *pro se* petition, a writ of *habeas corpus*

pursuant to 28 U.S.C. § 2254.  Petitioner was convicted on January 27, 2004, after a trial by jury,

of second degree murder and third degree criminal possession of a weapon in Westchester

County Court (Zambelli, J.).  He was sentenced to concurrent terms of twenty-five and seven

years imprisonment, along with a three year period of post-release supervision.  This petition

comes before me pursuant to an Order of Reference dated December 18, 2006 (Docket No. 3)

which was reassigned to me on January 12, 2009 (Docket No. 18).  For the reasons set forth

below, I respectfully recommend that this petition be **GRANTED**.

## II. BACKGROUND[1]

### A.    The Crime and Police Investigation

---

[1] Unless otherwise indicated, the information within this section is taken from a review of
the Brief for Respondent ("Br. for Resp't") (attached to Resp't Mem. of Law & Exs. ("Resp't
Mem."), at Ex. I (Docket No. 10)), the Brief for the Defendant-Appellant ("Br. for Def.-
Appellant") (Ex. H), the pretrial motions and decisions (Exs. A-G), Respondent's Affirmation in
Opposition to the Petition ("Resp't Aff.") (Docket No. 9), and the transcripts.  All exhibits cited
within this Report and Recommendation are attached to Resp't Mem. (Docket No. 10).

Around 9:00 a.m. on October 7, 2002, Petitioner rode his bicycle down West First Street in the City of Mount Vernon, New York. He noticed Steven Donaldson ("Donaldson") sitting in a car stopped at a traffic light. Petitioner got off his bicycle, approached Donaldson, and spoke to him briefly through the car's open window. Petitioner drew a loaded .38-caliber revolver and pointed it at Donaldson. He then lowered the gun and Donaldson closed his car window. Petitioner raised the gun again and shot Donaldson in the head at point-blank range through the closed window. Donaldson died from his wounds the next morning.

Mount Vernon police interviewed witnesses and processed the crime scene. Fingerprints found on a bicycle a block away were matched to Petitioner.

**B.      The Arrest, Interrogation, Line Up, Confession, and Search Warrant**

Mount Vernon detectives learned that Petitioner was scheduled to appear in New Rochelle City Court on an unrelated narcotics charge on November 7, 2002.[2] They contacted New Rochelle prosecutors and informed them they intended to arrest Petitioner that day for the homicide. Prosecutors advised the detectives that the arrest should not be effectuated until after Petitioner left the courthouse. While Petitioner's case was adjourned for second-call, court security officers handcuffed Petitioner after he engaged in certain disorderly conduct in the courthouse hallway. The security officers and detectives eventually escorted Petitioner outside the courthouse. The security officers removed their handcuffs from Petitioner, the detectives placed their own handcuffs on him, and the detectives transported him to the police station. Petitioner's New Rochelle attorney was unaware that he left the courthouse. The New Rochelle prosecutor later dismissed the narcotics case in light of the homicide arrest.

---

[2] In August of 2002, Petitioner was arrested for a narcotics offense. His case was placed on the New Rochelle court calendar on November 7, 2002 for a plea disposition.

At the police station, Petitioner was patted down, taken into a conference room, and handcuffed to a chair. Detectives obtained pedigree information and then read Petitioner his Miranda[3] rights. Petitioner indicated both verbally and in writing that he understood his rights. Although he was interrogated for approximately one and one-half hours, no relevant statements were given.

At approximately 1:30 p.m., Petitioner was taken to another precinct for a lineup. After the lineup, Petitioner was told that the witnesses failed to identify him and he was free to leave. Petitioner's personal belongings were left at the other police station so Petitioner asked a detective if he would drive him back there. About thirty minutes later, the men left together and drove to the other station. Petitioner was not in handcuffs. He then asked the detective about the crime and the reason why the police suspected him. He also requested to see a sketch of the suspect that a witness had provided. At approximately 5:00 p.m., the men arrived at the other station. The detective showed Petitioner the sketch and then asked him if they could question him further. Petitioner agreed. Petitioner remained at the station for approximately five and one-half more hours. He was not handcuffed and was provided food. At one point, Petitioner asked about the differences between New York's various homicide offenses. Police told him that a conviction of first degree murder carried a death sentence. Petitioner then asked how the charge may change if he told police what happened during the shooting. When Petitioner started to talk about the gun used in the homicide a detective stopped him and obtained another Miranda form. Petitioner was then read his rights again and signed the form. He did not ask to speak with an attorney or to leave the station. Petitioner confessed to the homicide in a videotaped

---

[3] Miranda v. Arizona, 384 U.S. 436, 478 (1966).

3

confession.  However, he stated that he did not intend to fire the gun or to kill Donaldson, and that the gun had discharged accidentally.

Police obtained a search warrant for the residence Petitioner was staying at that time.  On November 12, 2002, the warrant was executed and police recovered a gun which was later identified as the weapon used to kill Donaldson.

## C.    The Indictment

Petitioner was indicted on the following counts: murder in the second degree (intentional murder), in violation of N.Y. Penal Law § 125.25(1);[4] murder in the second degree (depraved indifference murder), in violation of N.Y. Penal Law § 125.25(2);[5] criminal possession of a weapon in the second degree, in violation of N.Y. Penal Law § 265.03(2);[6] criminal possession

---

[4] "A person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, he causes the death of such person or of a third person . . . ."  N.Y. Penal Law § 125.25(1).

[5] "A person is guilty of murder in the second degree when . . . [u]nder circumstances evincing a depraved indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person . . . ."  N.Y. Penal Law § 125.25(2).

[6] "A person is guilty of criminal possession of a weapon in the second degree when . . . [h]e possesses a loaded firearm with intent to use the same unlawfully against another . . . ."  N.Y. Penal Law § 265.03(2), amended by 2005 N.Y. Sess. Laws ch. 764, § 3 (2005).

4

of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(1);[7] and criminal

possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(4)(a).[8]

**D.**     **Pretrial Hearings**

By pretrial omnibus motion, Petitioner's attorney moved to, among other things, dismiss

the indictment for lack of probable cause and suppress the confession.  The court ordered a

pretrial hearing to determine the voluntariness of Petitioner's confession and whether or not his

right to counsel was violated.  The court denied the motion to dismiss the indictment on the

ground that the motion failed to include sufficient factual assertions to warrant dismissal or a

pretrial hearing.

Petitioner filed a subsequent motion to controvert the search warrant and to suppress

evidence obtained therefrom as a product of an invalid confession.  The court conducted a

hearing to determine validity of the warrant.  It held that the warrant was supported by probable

cause to the extent that Petitioner's confession was lawfully obtained.

The court then conducted a hearing to determine the lawfulness of the lineup and

confession.  With respect to the lineup, the court held that it occurred prior to the initiation of

significant judicial activity and that Petitioner had no right to counsel at that stage.  With respect

to the confession, the court heard testimony from law enforcement, New Rochelle court security,

---

[7] "A person is guilty of criminal possession of a weapon in the third degree when . . . [h]e
commits the crime of criminal possession of a weapon in the fourth degree . . . and has been
previously convicted of any crime . . . ." N.Y. Penal Law § 265.02(1), amended by 2005 N.Y.
Sess. Laws ch. 764, § 2 (2005).  "A person is guilty of criminal possession of a weapon in the
fourth degree when . . . [h]e possesses any . . . dangerous or deadly instrument or weapon with
intent to use the same unlawfully against another . . . ." Id. § 265.01(2).

[8] "A person is guilty of criminal possession of a weapon in the third degree when . . .
[s]uch person possesses any loaded firearm." N.Y. Penal Law § 265.02(4)(a), repealed by 2006
N.Y. Sess. Laws ch. 742, § 1 (2006).

New Rochelle prosecutors, Petitioner's New Rochelle defense attorney, and Petitioner himself. Petitioner testified he was not given <u>Miranda</u> warnings until after his confession, that he repeatedly asked for a lawyer, and that he was beaten by detectives. The court found Petitioner's claims incredible in light of his demeanor in the videotaped confession and during the hearing. The court also found no evidence to support Petitioner's contention that he requested counsel. Finally, the court found that the conversation in which the confession took place was initiated by Petitioner. The court determined that the <u>Miranda</u> waiver was valid and the confession was voluntary.

**E.   Trial and Sentencing**

At trial, Petitioner testified in his own defense. He admitted that he fired the gun at Donaldson. Consistent with his confession, he stated that the gun accidentally fired and that he did not intend to kill Donaldson.

At the close of evidence, defense counsel moved for dismissal on the grounds that the State failed to present legally sufficient evidence to establish (1) "circumstances evidencing a wanton and depraved indifference to human life as opposed to merely a reckless act with a gun," and (2) "a prima facie case as to the intentional homicide." (Trial Tr., at 1634-35). The motion was denied.

On December 2, 2003, the jury returned its verdict finding Petitioner guilty of second degree depraved indifference murder, in violation of N.Y. Penal Law § 125.25(2), and criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02(1). The jury acquitted Petitioner of intentional murder.

On January 27, 2004, Petitioner was sentenced to an indeterminate term of imprisonment of twenty-five years to life on the murder conviction, and a concurrent, determinate term of

6

seven years imprisonment on the weapon conviction.  The court also imposed a three year period

of post-release supervision.

**F.**     **Direct Appeal**

On or about April 8, 2005, Petitioner, through appellate counsel,[9] appealed his

conviction to the New York State Appellate Division, Second Department, and raised the

following claims:

> (1)     Petitioner was arrested without probable cause and the court erred in failing
> to conduct a hearing on the matter, (see Br. for Def.-Appellant, at 49-52);
>
> (2)     the hearing court erred in failing to suppress Petitioner's confession on the
> ground that it was procured in violation of his right to counsel, (see id. at 32-
> 48);
>
> (3)     the hearing court erred in failing to suppress the gun from evidence on the
> ground that it was obtained from Petitioner's invalid confession, (see id. at
> 52-53);
>
> (4)     the trial court erred in precluding defense counsel from calling certain
> witnesses to testify, (see id. at 53-61);
>
> (5)     the trial court erred in limiting the scope of defense counsel's summation,
> (see id. at 61-67); and
>
> (6)     the sentence was excessive, (see id. at 67-71).

The Second Department affirmed the conviction on October 11, 2005.  People v. Lyons,

801 N.Y.S.2d 752 (App. Div. 2005).  The New York Court of Appeals denied leave to appeal on

January 30, 2006.  People v. Lyons, 6 N.Y.3d 777 (2006).  Petitioner did not seek a writ of

*certiorari* to the United States Supreme Court.  (See Am. Pet. Under 28 U.S.C. § 2254 for Writ

of Habeas Corpus by a Person in State Custody (hereinafter "Am. Pet."), at 3 (attached to Not. of

Mot. to Amend Pet. for Writ of Habeas Corpus) (Docket No. 12)).  Petitioner's conviction

became final on May 1, 2006.[10]

---

[9] Petitioner was represented by different counsel on appeal.

[10] A judgment of conviction becomes final when the time to file a petition for a writ of
*certiorari* to the United States Supreme Court has expired, or, ninety days after the New York

## G.    **State Collateral Proceedings**

### 1.    *§ 440.10 Motion*

On or about May 14, 2007, Petitioner, proceeding *pro se*, moved the trial court to vacate

the judgment of his conviction pursuant to N.Y. Crim. Proc. Law § 440.10[11] on the following

grounds:

> (1)    the evidence was legally insufficient to prove the element of "depravity" for
> depraved indifference murder, (Aff. in Supp. of Mot. to Vacate J. of
> Conviction (hereinafter "§ 440 Aff.") ¶ 8 (Ex. U); see also id. ¶¶ 5-6, 12);
>
> (2)    Petitioner was denied his right to the effective assistance of counsel due to
> trial counsel's failure to request a jury instruction on the element of
> depravity, (see id. ¶¶ 8-10, 13-14, 18); and
>
> (3)    Petitioner is actually innocent of the offense of depraved indifference
> murder, (see id. ¶ 3).

The court denied Petitioner's motion on September 28, 2007.  (Sept. 28, 2007 Decision & Order

(Ex. X)).  The Second Department denied leave to appeal on January 9, 2008.  (Ex. AA).

### 2.    **Error Coram Nobis** *Petition*

On or about April 10, 2007, Petitioner, proceeding *pro se*, moved the Second Department

for a writ of *error coram nobis* on the following grounds:

> (1)    Petitioner was denied his right to the effective assistance of counsel for
> appellate counsel's failure to move for re-argument in light of the
> supervening New York Court of Appeals case, People v. Suarez, 6 N.Y.3d
> 202 (2005) (per curiam), which was decided while Petitioner's direct appeal
> was pending, (see Verified Pet. for a Writ of Error Coram Nobis (hereinafter
> "Error Coram Nobis Pet.") ¶ 13 (Ex. N)); and

---

Court of Appeals denies leave to appeal.  See 28 U.S.C. § 2101(d); Sup. Ct. R. 13.1; see, e.g.,
Brown v. Grenier, 409 F.3d 523, 524 n.3 (2d Cir. 2005).  In this case, the Court of Appeals
denied Petitioner leave to appeal on January 30, 2006.  Ninety days thereafter fell on April 30,
2006.  Because April 30 was a Sunday, Petitioner's conviction became final on May 1, 2006.

[11] "At any time after the entry of a judgment, the court in which it was entered may, upon
motion of the defendant, vacate such judgment . . . ."  N.Y. Crim. Proc. Law § 440.10(1).

> (2)     Petitioner was denied his right to the effective assistance of counsel for appellate counsel's failure to raise a claim of legally insufficient evidence to support the depraved indifference murder conviction, (see id. ¶ 16).

The Second Department denied the petition on June 26, 2007. People v. Lyons, 837 N.Y.S.2d 587 (App. Div. 2007). The New York Court of Appeals denied leave to appeal on September 20, 2007. People v. Lyons, 9 N.Y.3d 924 (2007).

## H.     *Habeas Corpus* Proceedings

On or about April 25, 2007, Petitioner filed a petition seeking a writ of *habeas corpus* in the Eastern District of New York.[12] (Docket No. 1). The case was transferred to the Southern District of New York on May 31, 2007. On September 28, 2007, Petitioner's request to stay the proceedings pending the outcome of his state collateral motions was granted. (Docket No. 8). A second stay was granted on February 19, 2008. (Docket No. 11). Petitioner then moved to amend his petition to incorporate claims raised on state collateral review. The motion was granted on October 3, 2008. (Docket Nos. 12, 14).[13] Accordingly, Petitioner raises the following claims on *habeas* review:

> (1)     Petitioner was arrested without probable cause and the court erred in failing to conduct a hearing on the matter, (see Am. Pet., at 15-16; see also Br. for Def.-Appellant, at 49-52);
>
> (2)     the hearing court erred in failing to suppress Petitioner's confession on the ground that it was procured in violation of his right to counsel, (see Am. Pet., at 15; see also Br. for Def.-Appellant, at 32-48);
>
> (3)     the hearing court erred in failing to suppress the gun from evidence on the ground that it was obtained from Petitioner's invalid confession, (see Am. Pet., at 15-16; see also Br. for Def.-Appellant, at 52-53);

---

[12] The petition was timely filed. See 28 U.S.C. § 2244(d).

[13] Petitioner's amended petition was filed concurrently with his motion to amend and is the operative pleading in this matter. (See Docket No. 12).

(4)     the trial court erred in precluding defense counsel from calling certain witnesses to testify, (see Am. Pet., at 16-17; see also Br. for Def.-Appellant, at 53-61);

(5)     the trial court erred in limiting the scope of defense counsel's summation, (see Am. Pet., at 17-18; see also Br. for Def.-Appellant, at 61-67);

(6)     the evidence was legally insufficient to prove the element of "depravity" for depraved indifference murder, (Am. Pet., at 18-19; see also § 440 Aff. ¶¶ 5-6, 8, 12);

(7)     Petitioner was denied his right to the effective assistance of counsel due to trial counsel's failure to request a jury instruction on the element of depravity, (see Am. Pet., at 18-19; see also § 440 Aff. ¶¶ 8-10, 13-14, 18);

(8)     Petitioner is actually innocent of the offense of depraved indifference murder, (see Am. Pet., at 20-21; see also § 440 Aff. ¶ 3);

(9)     Petitioner was denied his right to the effective assistance of counsel for appellate counsel's failure to move for re-argument in light of the supervening New York Court of Appeals case, People v. Suarez, 6 N.Y.3d 202 (2005) (per curiam), which was decided while Petitioner's direct appeal was pending, (see Am. Pet., at 19-20; see also Error Coram Nobis Pet. ¶ 13); and

(10)    Petitioner was denied his right to the effective assistance of counsel for appellate counsel's failure to raise a claim of legally insufficient evidence to support the depraved indifference murder conviction, (see Am. Pet., at 20; see also Error Coram Nobis Pet. ¶ 16).

## III. DISCUSSION

### A.     Applicable Law on *Habeas Corpus* Review

"Habeas review is an extraordinary remedy." Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)). Before a federal district court may review the merits of a state criminal judgment in a *habeas corpus* action, the court must first determine whether the petitioner has complied with the procedural requirements set forth in 28 U.S.C. §§ 2244 and 2254. If there has been procedural compliance with these statutes, the court must then determine the appropriate standard of review applicable to the petitioner's claim(s) in accordance with § 2254(d). The procedural and substantive standards applicable to *habeas* review, which were substantially modified by the Anti-Terrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1220 (Apr. 24, 1996), are summarized

below.

1.      ***Timeliness Requirement***

A federal *habeas corpus* petition is subject to AEDPA's strict, one-year statute of

limitations. See 28 U.S.C. § 2244(d). The statute provides four different potential starting

points for the limitations period, and specifies that the latest of these shall apply. See id. §

2244(d)(1). Under the statute, the limitation period is tolled only during the pendency of a

properly filed application for State post-conviction relief, or other collateral review, with respect

to the judgment to be challenged by the petition. See id. § 2244(d)(2). The statute reads as

follows:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas
> corpus by a person in custody pursuant to the judgment of a State court. The
> limitation period shall run from the latest of –
>
>> (A) the date on which the judgment became final by the conclusion of direct
>> review or the expiration of the time for seeking such review;
>> (B) the date on which the impediment to filing an application created by
>> State action in violation of the Constitution or laws of the United States is
>> removed, if the applicant was prevented from filing by such State action;
>> © the date on which the constitutional right asserted was initially recognized
>> by the Supreme Court, if the right has been newly recognized by the Supreme
>> Court and made retroactively applicable to cases on collateral review; or
>> (D) the date on which the factual predicate of the claim or claims presented
>> could have been discovered through the exercise of due diligence.
>
> (d)(2) The time during which a properly filed application for State post-conviction
> or other collateral review with respect to the pertinent judgment or claim is pending
> shall not be counted toward any period of limitation under this subsection.

Id. § 2244(d).

The one-year limitation period is subject to equitable tolling, which is warranted when a

petitioner has shown "'(1) that he has been pursuing his rights diligently, and (2) that some

extraordinary circumstances stood in his way' and prevented timely filing." Holland v. Florida,

130 S. Ct. 2549, 2262 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  In the

Second Circuit, equitable tolling is confined to "rare and exceptional circumstance[s]," Smith v.

McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam) (internal quotation omitted), which have

"prevented [the petitioner] from filing his petition on time," Valverde v. Stinson, 224 F.3d 129,

134 (2d Cir. 2000) (internal quotation marks and emphasis omitted).  The applicant for equitable

tolling must "demonstrate a causal relationship between the extraordinary circumstances on

which the claim for equitable tolling rests and the lateness of his filing – a demonstration that

cannot be made if the petitioner, acting with reasonable diligence, could have filed on time

notwithstanding the extraordinary circumstances." Valverde, 224 F.3d at 134.

### 2.   *Exhaustion Requirement*

A federal court may not grant *habeas* relief unless the petitioner has first exhausted his

claims in state court.  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); see 28 U.S.C. §

2254(b)(1) ("[a]n application for a writ of habeas corpus on behalf of a person in custody

pursuant to the judgment of a State court shall not be granted unless it appears that – (A) the

applicant has exhausted the remedies available in the courts of the State; or (B)(I) there is an

absence of available corrective process; or (ii) circumstances exist that render such process

ineffective to protect the rights of the applicant"); id. § 2254© (the petitioner "shall not be

deemed to have exhausted the remedies available in the courts of the State . . . if he has the right

under the law of the State to raise, by any available procedure, the question presented").  The

exhaustion requirement promotes interests in comity and federalism by demanding that state

courts have the first opportunity to decide a petitioner's claim.  Rose v. Lundy, 455 U.S. 509,

518-19 (1982).

12

To exhaust a federal claim, the petitioner must have "fairly present[ed] his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim," and thus "giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). "Because non-constitutional claims are not cognizable in federal habeas corpus proceedings, a habeas petition must put state courts on notice that they are to decide federal constitutional claims." Petrucelli v. Coombe, 735 F.2d 684, 687 (2d Cir. 1984) (citing Smith v. Phillips, 455 U.S. 209, 221 (1982)). Such notice requires that the petitioner "apprise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005) (internal citation omitted). A claim may be "fairly presented" to the state courts therefore, even if the petitioner has not cited "chapter and verse of the Constitution," in one of several ways:

> (a) [R]eliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, © assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye v. Attorney Gen. of State of N.Y., 696 F.2d 186, 194 (2d Cir. 1982). A *habeas* petitioner who fails to meet a state's requirements to exhaust a claim will be barred from asserting that claim in federal court. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

However, "[f]or exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred." Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997) (internal quotation omitted). "In such a case, a petitioner no longer has 'remedies available in the courts of the

13

State' within the meaning of 28 U.S.C. § 2254(b)." <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991). Such a procedurally barred claim may be deemed exhausted by a federal *habeas* court. <u>See, e.g.</u>, <u>Reyes</u>, 118 F.3d at 139. However, absent a showing of either "cause for the procedural default and prejudice attributable thereto," <u>Harris v. Reed</u>, 489 U.S. 255, 262 (1989), or "actual innocence," <u>Schlup v. Delo</u>, 513 U.S. 298 (1995), the petitioner's claim will remain unreviewable by a federal court.

Finally, notwithstanding the procedure described above, a federal court may yet exercise its discretion to review and deny a mixed petition containing both exhausted and unexhausted claims, if those unexhausted claims are "plainly meritless." <u>Rhines v. Weber</u>, 544 U.S. 269, 277 (2005); <u>see</u> 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); <u>see also, e.g.</u>, <u>Padilla v. Keane</u>, 331 F. Supp.2d 209, 216 (S.D.N.Y. 2004) (interests in judicial economy warrant the dismissal of meritless, unexhausted claims).

### 3. ***Procedural Default***

Even where an exhausted and timely *habeas* claim is raised, comity and federalism demand that a federal court abstain from its review when the last-reasoned state court opinion to address the claim relied upon "an adequate and independent finding of a procedural default" to deny it. <u>Harris</u>, 489 U.S. at 262; <u>see also</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 730 (1991); <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803 (1991); <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 126 (2d Cir. 1995).

A state court decision will be "independent" when it "fairly appears" to rest primarily on state law. <u>Jimenez v. Walker</u>, 458 F.3d 130, 138 (2d Cir. 2006) (citing <u>Colman</u>, 501 U.S. at 740). A decision will be "adequate" if it is "'firmly established and regularly followed' by the

state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir. 1999) (quoting Ford v. Georgia,

498 U.S. 411, 423-24 (1991)).

### 4. *AEDPA Standard of Review*

Before a federal court can determine whether a petitioner is entitled to federal *habeas*

relief, the court must determine the proper standard of review under AEDPA for each of the

petitioner's claims. 28 U.S.C. § 2254(d)(1)-(2). This statute "modifie[d] the role of federal

habeas corpus courts in reviewing petitions filed by state prisoners," and imposed a more

exacting standard of review. Williams v. Taylor, 529 U.S. 362, 402 (2000). For petitions filed

after AEDPA became effective, federal courts must apply the following standard to cases in

which the state court adjudicated on the merits of the claim:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination
> > of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d)(1)-(2). The deferential AEDPA standard of review will be triggered when the state

court has both adjudicated the federal claim "on the merits," and reduced its disposition to

judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001).

Under the first prong, a state court decision is contrary to federal law only if it "arrives at

a conclusion opposite to that reached by the [the Supreme Court] on a question of law or if [it]

decides a case differently than [the Supreme Court] on a set of materially indistinguishable

facts." Williams, 529 U.S. at 413. A decision involves an "unreasonable application" of

Supreme Court precedent if the state court "identifies the correct governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to be correct. 28 U.S.C. § 2254(e)(1); see Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." § 2254(e)(1).

Where the state court "did not reach the merits" of the federal claim, then "federal habeas review is not subject to the deferential standard that applies under AEDPA . . . . Instead, the claim is reviewed de novo." Cone v. Bell, 129 S. Ct. 1769, 1784 (2009); see § 2254(d).

## B.    New York's Depraved Indifference Murder Law

Because recent changes to New York's depraved indifference murder law are applicable to certain claims raised by Petitioner, I briefly address those changes here. New York's depraved indifference murder statute requires proof beyond a reasonable doubt of four elements: (1) the defendant recklessly (2) engaged in conduct that created a grave risk of death to another, (3) under circumstances that evinced a depraved indifference to human life, (4) which caused the death of another. People v. Register, 60 N.Y.2d 270, 276 (1983); see also N.Y. Penal Law § 125.25(2). At the time of Petitioner's trial, the New York Court of Appeals held that the law required proof of a reckless *mens rea*. The element "under circumstances evincing a depraved indifference to human life" was interpreted as an "'additional requirement refer[ring] to neither the *mens rea* nor the *actus reus*. . . . but rather a definition of the *factual setting* in which the risk creating conduct must occur . . . [It was] an objective assessment of the degree of risk presented

16

by [a defendant's] reckless conduct.'" People v. Sanchez, 98 N.Y.2d 373, 379-80 (2002)

(emphasis in original) (quoting Register, 60 N.Y.2d at 276-77).  The Register formulation was

expressly reaffirmed one year before Petitioner's trial in People v. Sanchez.

Following Sanchez, the Court of Appeals "gradually and perceptibly changed" the

Register interpretation.  Policano v. Herbert, 7 N.Y.3d 588, 602-03 (2006).  Specifically, a series

of cases adjudicated while Petitioner's direct appeal was pending re-interpreted depravity from

what was an objective, degree-of-risk calculation into what became a subjective, culpable mental

state.

On June 10, 2003 – after Petitioner's arrest but prior to his trial – the Court of Appeals

determined in People v. Hafeez, 100 N.Y.2d 253, 258 (2003) that, where the evidence showed

that a defendant plotted revenge, laid in wait, and then stabbed a victim, only an intentional *mens*

*rea* could be found.  Accordingly, it held that such evidence was legally insufficient to support a

conviction for depraved indifference murder.

On March 25, 2004 – after Petitioner's sentence but prior to the time that counsel filed

his appellate brief – the court determined in People v. Gonzalez, 1 N.Y.3d 464, 467 (2004) that,

where the evidence showed that a defendant aimed a gun and "shot the victim once in the chest,

once in the face from 6 to 18 inches away, six times in the back of the head from approximately

six inches away, and twice in the back," again, only an intentional *mens rea* could be found.

Accordingly, it held that such evidence was legally insufficient to support a conviction for

depraved indifference murder.  Hafeez and Gonzalez therefore "made it clear that depraved

indifference murder may not be properly charged in the overwhelming majority of homicides

that are prosecuted in New York." People v. Payne, 3 N.Y.3d 266, 270 (2004).

17

On October 19, 2004 – after Petitioner was sentenced but prior to the time that counsel filed his appellate brief – the court confirmed in People v. Payne, 3 N.Y.3d at 272 that, in the absence of special circumstances, "one-on-one shootings or knifings" could "almost never" qualify as depraved indifference murders. As in Hafeez and Gonzalez, the court reasoned in Payne that such events will normally show only a "manifest intent to kill." Id. at 271.

On December 22, 2005 – after the Second Department affirmed Petitioner's conviction on direct appeal but prior to the time that the Court of Appeals denied him leave to appeal – the court acknowledged in People v. Suarez, 6 N.Y.3d at 215 that it was "depart[ing] slightly from the Register formulation." As in Hafeez, Gonzalez, and Payne, the court in Suarez confirmed that the *mens rea* of depraved indifference murder could not be satisfied where the evidence at trial showed only an intent to kill. In this respect, the court noted a "fundamental misunderstanding of the depraved indifference murder statute" by prosecutors who "proliferat[ed] . . . the use of depraved indifference murder as a fallback theory under which to charge intentional killers." Suarez, 6 N.Y.3d at 207.

The court in Suarez, however, went further. Specifically, it held "that the additional requirement of depraved indifference has meaning *independent* of recklessness and gravity of the risk." Id. at 215 (emphasis added). In contrast to the Register formulation which required an objective, degree-of-risk calculation, the court held that "'[c]ircumstances evincing a depraved indifference to human life' are not established by recklessness coupled only with actions that carry even an inevitable risk of death." Id. at 214. Instead, the court held that this element,

> [I]s best understood as an utter disregard for the value of human life – a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not. Reflecting wickedness, evil or inhumanity, as manifested by brutal, heinous and despicable acts, depraved indifference is embodied in conduct that is so wanton, so deficient in a moral sense of concern, so devoid of

18

regard of the life or lives of others, and so blameworthy as to render the actor as culpable as one whose conscious objective is to kill.

Id. (internal quotation marks and citation omitted).

On July 5, 2006, the court specifically held in People v. Feingold, 7 N.Y.3d 288, 296 (2006) that Suarez "correctly states the law" with respect to the element of depraved indifference. However, the court also stated that it had "stopped short" in Suarez of holding that this element constituted the mental state of the offense. Feingold, 7 N.Y.3d at 294. It did so in Feingold and specifically overturned Register and Sanchez. Feingold was decided after Petitioner's leave to appeal was denied and after the date Petitioner's conviction became final.

Accordingly, the "quartet" of cases leading up to Feingold had a two-fold impact on the proof necessary to establish the elements of depraved indifference murder. First, after Hafeez, Gonzalez, and Payne, evidence would be found legally insufficient where it demonstrated only "a 'manifest intent to kill,' . . . thereby negating the core element of recklessness." People v. McMillon, 816 N.Y.S.2d 167, 171 (App. Div. 2006) (per curiam) (quoting Payne, 3 N.Y.3d at 271). Second, after Suarez, evidence would be found legally insufficient where it fell short of "establish[ing] the required level of depravity and indifference." Id.

## C.    Analysis of Petitioner's Claims

### 1.    *Claims Raised on Direct Appeal (Claims 1-5)*[14]

The Second Department's written decision on Petitioner's direct appeal represents the last-reasoned state court decision to address Claims 1-5. See Ylst, 501 U.S. at 803. It is clear that the court denied each of these claims on the merits. Claims 2-3 were specifically addressed

---

[14] For organizational purposes, I identify the claims as I have numbered them in Section II(H) above.

and denied.  Lyons, 801 N.Y.S.2d at 752.  The court then denied Claims 1, 4 and 5 by determining that "[t]he defendant's remaining contentions are either without merit or academic in light of the foregoing."  Id. at 753.  This decision constitutes a denial on the merits for purposes of AEDPA.  See Brown v. Artuz, 283 F.3d 492, 498 (2d Cir. 2002).  Accordingly, I address Claims 1-5 under AEDPA's deferential standard of review.

a.      **Fourth Amendment (Claim 1)**

Petitioner asserts he was arrested without probable cause and the state court erred by failing to conduct a hearing on this matter.  He argues that his subsequent confession and the evidence obtained during execution of the search warrant should have been suppressed as tainted fruit of this arrest.  Respondent contends this claim is not cognizable upon *habeas* review pursuant to the Stone v. Powell doctrine.  (See Resp't Mem., at 19-26).

In Powell, the Supreme Court held that, "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 482 (1976); see also, e.g., Graham v. Costello, 299 F.3d 129, 134 (2d Cir. 2002) ("[O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim . . . , the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief. . . .  [T]he bar to federal habeas review of Fourth Amendment claims is permanent and incurable absent a showing that the state failed to provide a full and fair opportunity to litigate the claim[.]").  Fourth Amendment claims may not be reviewed by this Court unless one of two narrow exceptions apply: "(a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violations; or (b) if the

20

state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

Petitioner does not – nor could he – contend that New York failed to provide corrective procedure to redress his alleged Fourth Amendment claims.  Indeed, as the Second Circuit has noted, "the federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 *et seq.* . . . , as being facially adequate."  Id. at 70 n.1 (internal quotation marks and citation omitted).

Rather, Petitioner's filings may be liberally construed to argue that an unconscionable breakdown occurred when the trial court denied that part of his pretrial motion that requested a hearing into the issue of probable cause to arrest.  See Haines v. Kemer, 404 U.S. 519, 520-21 (1972) (per curiam) (*pro se* allegations contained in *habeas corpus* petitions should be liberally construed; Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks and citation omitted) (application submitted by *pro se* petitioner should be "read liberally and should be interpreted to raise the strongest arguments that [it] suggests"); (see also Pet'r Reply Affirm. ¶¶ 22-30 (Docket No. 17)).  This argument is unfounded.  "An unconscionable breakdown occurs when the state court fails to conduct a reasoned inquiry into the petitioner's claim." Valtin v. Hollins, 248 F. Supp.2d 311, 317 (S.D.N.Y. 2003).  Where a petitioner was provided "an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal review."  Graham, 299 F.3d at 134.  In this case, no breakdown in procedure occurred: Petitioner raised his Fourth Amendment claim through pretrial motion and again argued the claim on direct appeal.  "[M]ere dissatisfaction or

disagreement with the outcome of a suppression motion is not sufficient to establish that an 'unconscionable breakdown' occurred in the existing process in violation of the petitioner's Fourth Amendment rights under the Constitution." Cook v. Donnelly, No. 02-cv-6073, 2009 WL 909637, at *5 (W.D.N.Y. Mar. 31, 2009) (citing Capellan, 975 F.2d at 71);[15] see also, e.g., Gonzalez v. Superintendent, Sullivan Corr. Facility, 761 F. Supp. 973, 977 (E.D.N.Y. 1991) (no breakdown occurred where state court denied petitioner's request for a probable cause hearing after finding petitioner asserted insufficient facts in his motion to warrant a hearing). Accordingly, Claim 1 must be denied.

### b.     Right to Counsel (Claim 2)

Petitioner asserts the state court erred in permitting his confession into evidence because it was obtained in violation of his right to counsel.  Specifically, Petitioner argues that he was represented by his New Rochelle attorney at the time he was removed from the courthouse and questioned by detectives, that the detectives knew he was represented, and that any statements he provided during this interrogation are invalid because detectives did not notify the attorney of his arrest.  Petitioner also argues that detectives ignored his repeated requests to allow him to speak to his attorney.  Respondent contends the state court's decision denying this claim was neither contrary to, nor an unreasonable application of, clearly established federal law.  Respondent also contends the factual findings made by the state court are entitled to a presumption of correctness. (See Resp't Mem., at 2-18).

### i.     Miranda

---

[15] Copies of unreported cases cited herein will be mailed to Petitioner.  See Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

22

It is clear that "[v]olunteered statements of any kind are not barred by the Fifth Amendment." Miranda, 384 U.S. at 478. However, when an individual is subjected by law enforcement to "custodial interrogation," he faces "inherently compelling pressures." Id. at 444, 467. To ensure that the privilege against self-incrimination is secured in such an atmosphere, Miranda requires law enforcement to inform a suspect who is (1) in custody and (2) being interrogated that the suspect has a right to remain silent, that anything said may be used as evidence against the suspect at trial, and that the suspect has a right to have present a retained or an appointed attorney. Id. at 444. An "accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived Miranda rights' when making the statement." Berghuis v. Thompkins, 130 S. Ct. 2250, 2260 (2010) (quoting North Carolina v. Butler, 441 U.S. 369, 373 (1979)).

For Miranda purposes, the determination of whether or not a statement was elicited while the defendant was "in custody" involves a two-part inquiry. The court must determine "first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." Thompson v. Keohane, 516 U.S. 99, 112 (1995); see also Berkemer v. McCarty, 468 U.S. 420, 442 (1984) ("the only relevant inquiry [in determining when a suspect is in custody for purposes of Miranda] is how a reasonable man in the suspect's position would have understood his situation"). The former portion of the test is "distinctly factual," and thus entitled to the presumption of correctness under AEDPA. Thompson, 516 U.S. at 112. The latter portion of the test is premised upon an objectively reasonable standard, which is a mixed question of both law and fact. Id. at 112-13. Circumstances relevant to the custody determination include "whether a suspect is or is not told that she is free to leave; the location

23

and atmosphere of the interrogation; the language and tone used by the police; whether the suspect is searched, frisked, or patted down; and the length of the interrogation." Tankleff v. Senkowski, 135 F.3d 235, 244 (2d Cir. 1998) (internal citations omitted).

In this case, Petitioner was clearly subjected to custodial interrogation when he was first arrested, brought to the police station, handcuffed to a chair, and questioned by detectives. However, Petitioner was read and waived his Miranda rights. Petitioner also made no incriminating statements at that time. Accordingly, the state court's determination that no Miranda violation occurred during this stage did not unreasonably apply federal law.

With respect to the interview with police after the lineup, the hearing court made several factual determinations regarding the circumstances involved. The court found that: (1) Petitioner was read and waived his Miranda rights when he first arrived at the police station following his arrest outside the New Rochelle courthouse; (2) no relevant statements were provided at this time; (3) Petitioner was then transported to another precinct where a lineup was conducted; (4) Petitioner was informed that the witnesses failed to identify him as the shooter; (5) Petitioner was then told he was free to leave; (6) Petitioner asked a detective to give him a ride back to the original precinct; (7) Petitioner asked a detective why the police suspected him and whether he could view the sketch of the suspect provided by a witness; (8) once back at the original precinct, Petitioner voluntarily agreed to answer additional questions from detectives; (9) Petitioner and the detectives had several conversations about matters unrelated to the homicide; (10) Petitioner was provided McDonald's and pizza; (11) Petitioner was never restrained during this conversation; (12) Petitioner never asked to leave the precinct or to speak with a lawyer; (13) once Petitioner began to talk about the crime, he was re-read his Miranda rights; (14) Petitioner acknowledged that he understood his rights and waived them in writing; (15)

24

Petitioner was competent to waive his rights at the time; and (16) Petitioner then confessed to the homicide on videotape. (Oct. 28, 2003 Decision & Order, at 6-9).

Petitioner presents no evidence – let alone clear and convincing evidence – to rebut the presumption that the factual determinations of the hearing court are correct. 28 U.S.C. § 2254(e)(1). In light of these factual determinations, it is clear that the state court did not unreasonably apply Miranda in holding that Petitioner's waiver of his rights and his confession were voluntary. First, Petitioner was not "in custody" after the lineup. He was specifically told he was free to leave. However, Petitioner voluntarily asked detectives to transport him back to the police station to retrieve his personal items. He then initiated conversation with the police about the homicide by asking a detective why they suspected him and by requesting to see a sketch of the suspect. Petitioner then voluntarily agreed to answer additional questions. He was not in handcuffs or restrained in any way and was provided a meal while the questioning commenced. Miranda warnings at this time were therefore unnecessary. See California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)) ("Miranda warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect'"); id. at 1122-25 (where defendant voluntarily accompanied police to station for questioning and was informed he was not under arrest, defendant was not in custody for purposes of Miranda); see also, e.g., Tankleff, 135 F.3d at 243-44 (a relevant factor in determining whether, under the totality of the circumstances, a defendant is "in custody" is whether the defendant is told he or she is free to leave); United States v. Cota, 953 F.2d 753, 758-59 (2d Cir. 1992) (no custodial interrogation where defendant is released from handcuffs, voluntarily accompanies law

enforcement to station in order to retrieve personal property, and remains at station for six hours during which time she is told she is free to leave).

Second, by the time Petitioner subsequently confessed, he was re-read Miranda and voluntarily waived his rights. There is simply nothing to indicate that this waiver was not knowingly and voluntarily undertaken. See Oregon v. Elstad, 470 U.S. 298, 318 (1985) (failure to initially Mirandize will not preclude voluntary statement made after subsequent Miranda warning so long as coercive police tactics were not used and suspect understood his rights); Butler, 441 U.S. at 373 (express written waiver of Miranda rights is strong proof of validity of waiver); see also, e.g., Vasquez v. Senkowski, 54 F. Supp.2d 208, 217-18 (S.D.N.Y. 1999) (videotaped confession admissible after Miranda rights were re-read to petitioner and petitioner knowingly and voluntarily waived rights). Although Petitioner contends he invoked his Miranda rights by requesting to speak with an attorney, the state court specifically found that this did not occur and Petitioner has failed to rebut the presumption that this finding is correct. Accordingly, the state court's denial of this aspect of Claim 2 did not unreasonably apply Miranda.

### ii. *Sixth Amendment*

Once a suspect's Sixth Amendment right to counsel has automatically attached, it may not be waived during a police-initiated custodial interview. McNeil v. Wisconsin, 501 U.S. 171, 175 (1991). The Sixth Amendment right to counsel automatically attaches "at or after the time that judicial proceedings have been initiated against [a defendant] 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Brewer v. Williams, 430 U.S. 387, 398 (1977) (quoting Kirby v. Illinois, 406 U.S. 682, 689 (1972)).

> The Sixth Amendment right [to counsel], however, is offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, that is, "at or after the initiation of adversary judicial

26

criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment."

McNeil, 501 U.S. at 175 (quoting United States v. Gouveia, 467 U.S. 180, 188 (1984)).

Here, Petitioner's Sixth Amendment right to counsel did not automatically attach during the initial custodial interrogation, at the lineup, or during the second interview with police because no charges were yet brought against Petitioner for Donaldson's murder. Petitioner's reliance on Massiah v. United States, 377 U.S. 201 (1964) is therefore inapposite. (Pet'r Reply Affirm. ¶¶ 15-16). In Massiah, the defendant was already indicted on the specific offense that his uncounseled, incriminating statements related to. Massiah, 377 U.S. at 205-06. Although Petitioner's right to counsel was clearly invoked with respect to the narcotics offense, that invocation did not carry over and attach to the murder inquiry because the two offenses were completely unrelated. Accordingly, even if the detectives knew that Petitioner was represented by counsel for the narcotics offense, "there was no constitutional violation in their questioning . . . about the [murder] offense in the absence of counsel." Timmons v. Lee, No. 10-cv-1155, 2010 WL 3813963, at *13 (E.D.N.Y. Sept. 23, 2010). The state court's denial of this aspect of Claim 2 was therefore not an unreasonable application of the Sixth Amendment.

### c.    Suppression of Gun (Claim 3)

Petitioner's related claim asserts the court erred in failing to suppress the gun recovered as fruit of his invalid confession. However, as discussed above, the confession was valid. The state court's denial of Claim 3 was therefore not an unreasonable application of federal law.

### d.    Right to Present Witnesses (Claim 4)

Petitioner asserts the trial court deprived him of his fundamental right to a fair trial by preventing him from "present[ing] witnesses of [his] own choosing." (Br. for Def.-Appellant, at

27

56). Specifically, Petitioner argues that the court precluded him from calling to testify his New Rochelle attorney, the judge presiding over the New Rochelle case, and the prosecutor involved in the New Rochelle case. Petitioner argues these witnesses "were relevant with respect to the issue of voluntariness" of his subsequent confession. (Br. for Def.-Appellant, at 57). Respondent contends the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't Mem., at 27-38).

The Confrontation Clause of the Sixth Amendment of the U.S. Constitution guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const. Amend. VI. This right of confrontation embodies the right of the defendant to "a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690 (1986) (internal quotation marks and citation omitted). The right to present a complete defense includes the "fundamental right . . . of an accused to present witnesses in his own defense." Chambers v. Mississippi, 410 U.S. 284, 302 (1973). This right, however, is not absolute. See, e.g., Taylor v. Illinois, 484 U.S. 400, 411 (1988); Chambers, 410 U.S. at 302; Washington v. Schriver, 255 F.3d 45, 55 (2d Cir. 2001). The right to present evidence "'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'" Michigan v. Lucas, 500 U.S. 145, 149 (1991) (quoting Rock v. Arkansas, 483 U.S. 44, 55 (1987)). Specifically, a state court may exclude evidence in order to prevent "harassment, prejudice, [or] confusion of the issues," Crane, 476 U.S. at 689-90, or otherwise "through the application of evidentiary rules that serve the interests of fairness and reliability," Chambers, 410 U.S. at 302.

The Second Circuit has established a two-part test to assist federal *habeas* courts in determining, under AEDPA, whether a claim involving the right to present a complete defense warrants relief. First, the court must assess "the propriety of the trial court's evidentiary ruling."

28

Hawkins v. Costello, 460 F.3d 238, 244 (2d Cir. 2006) (internal quotation marks and citations

omitted).

> Of course, habeas corpus relief does not lie for errors of state law, and that
> necessarily includes erroneous evidentiary rulings.  The inquiry, however, into
> possible state evidentiary law errors at the trial level assists [the Court] in
> ascertaining whether the appellate division acted within the limits of what is
> objectively reasonable.

Id. (internal quotation marks and citations omitted).  Second, if the ruling was proper pursuant to

state evidentiary rules, the federal court must "consider whether the evidentiary rule is 'arbitrary

or disproportionate to the purposes it is designed to serve.'"  Id. at 244 (quoting United States v.

Scheffer, 523 U.S. 303, 308 (1998)).  "A state evidentiary rule is 'unconstitutionally arbitrary or

disproportionate only where it has infringed upon a weighty interest of the accused.'"  Id.

(quoting Scheffer, 523 U.S. at 308).[16]

In this case, the trial court excluded from evidence testimony regarding whether or not

Petitioner's "right to counsel" was violated when he was removed from the New Rochelle

courthouse.  (See Trial Tr., at 1371 (the "[r]ight to counsel is not an issue" for a jury); see also

id. at 1493, 1495).  The trial court determined that such testimony was not probative of any issue

relevant to the jury.  (See, e.g., id. at 1371, 1493, 1495).  This decision cannot be said to be

---

[16] Additionally, I note that, even prior to AEDPA's statutory changes to a federal court's
standard of review,

> [T]he Supreme Court had a traditional reluctance to impose constitutional constraints
> on ordinary evidentiary rulings by state trial courts.  The Court has never questioned
> the power of the States to exclude evidence through the application of evidentiary
> rules that themselves serve the interests of fairness and reliability – even if the
> defendant would prefer to see that evidence admitted.

Hawkins, 460 F.3d at 244 (internal quotation marks and citations omitted).

erroneous as a matter of New York evidentiary law. New York's evidentiary rules regarding relevancy parallel the Federal Rules of Evidence: relevant evidence is admissible, evidence is relevant if it tends to prove the existence or non-existence of a material fact, but "[a] court may, in its discretion, exclude relevant evidence if its probative value is outweighed by the prospect of trial delay, undue prejudice to the opposing party, confusing the issues or misleading the jury." People v. Primo, 96 N.Y.2d 351, 355 (2001) (internal quotation marks and citation omitted); see also Fed. R. Evid. 401-03. "Evidence of merely slight, remote or conjectural significance will ordinarily be insufficiently probative to outweigh these countervailing risks." Primo, 96 N.Y.2d at 355 (internal quotation marks and citation omitted). Finally, a trial judge is afforded "wide discretion in making evidentiary rulings." People v. Carroll, 95 N.Y.2d 375, 385 (2000).

Here, the hearing court already determined the legal issue involving Petitioner's right to counsel. The issue left for the jury's consideration was whether or not Petitioner's confession was voluntary, which was relevant to enable the jury to assess the overall credibility of Petitioner and the testifying officers. (See Trial Tr., at 1371, 1493, 1495). However, neither the judge, the prosecutor, nor Petitioner's previous attorney witnessed the confession or the events leading up to it. The only relevant event that the three witnesses had personal knowledge of was the fact that Petitioner was represented by counsel on the separate narcotics offense. This fact, however, was not in dispute. Nor could this fact alone demonstrate anything relevant about Petitioner's later confession. Moreover, testimony regarding Petitioner's interrogation and his later confession was presented to the jury by Petitioner and the police officers involved. The jury was therefore able to assess the voluntariness of Petitioner's confession based upon the testimony of those witnesses who had personal knowledge of it. Accordingly, the state court's evidentiary

30

ruling was proper and the Second Department's denial of Claim 4 not an unreasonable application of federal law.

### e.      Limitation on Summation (Claim 5)

Petitioner asserts he was denied his right to a fair trial when the trial court curtailed defense counsel's summation.  Specifically, Petitioner argues that although counsel was permitted to discuss Petitioner's "reckless" conduct, he was not permitted to discuss how Petitioner's conduct fell short of the "wanton" or "depraved" element necessary for depraved indifference murder.  Respondent contends the state court's decision was neither contrary to, nor an unreasonable application of, clearly established federal law.  (See Resp't Mem., at 39-44).

The right to present a complete defense includes the right to present a closing argument to the jury.  Herring v. New York, 422 U.S. 853, 859 (1975).  However, this right is not without limitations.  Counsel may not usurp the court's role by instructing the jury on the law. Accordingly, a trial court – which has "great latitude in . . . limiting the scope of closing summations" – may properly limit a summation which seeks to do so.  Id. at 862; see also, e.g., Crispino v. Allard, 378 F. Supp.2d 393, 410 (S.D.N.Y. 2005); Ayuso v. Artuz, No. 99-cv-12015, 2001 WL 246437, at *7 (S.D.N.Y. Mar. 7, 2001).

The transcripts reveal that defense counsel was interrupted by the court during summation at the following points:

| | |
|---|---|
| [DEFENSE COUNSEL]: | The Judge will tell you at the end of the case as to the charges of intentional murder, and she'll tell you that she's also submitting to you the charge of reckless depraved homicide, which is called depraved indifference . . . murder.  Both of those charges are murder in the second degree.  And the Judge will tell you [to] consider in the alternative – You can [sic] find him guilty of both. |
| THE COURT: | [Counselor], let me instruct the jury on the law, please. |

31

(Trial Tr., at 1724-25).

| | |
|---|---|
| [DEFENSE COUNSEL]: | In order for you to find Andrew guilty of this depraved murder, the Judge will tell you there are certain requirements. Listen to them. It's a reckless crime. But in addition, you have to find that Andrew was wanting. |
| THE COURT: | [Counselor], let me instruct the jury on the law. |
| [DEFENSE COUNSEL]: | I submit to you, ladies and gentlemen of the jury, there is nothing depraved or wanting about Andrew's conduct. It's reckless. The wanting – – |
| THE COURT: | I already explained to you not to discuss the law with the Jury. |
| [DEFENSE COUNSEL]: | No. I'm discussing the objective. |
| THE COURT: | No. You are using legal terms with the jury. Please do not do it. It requires a full instruction on the elements of the crime. |

(Id. at 1759-60).

It is clear from the first half of this dialogue that defense counsel attempted to talk to the jury about which instructions the court would later give them. The second portion of the dialogue reveals that defense counsel attempted to talk to the jury about the difference between "reckless" and "wanton" conduct. Because each portion attempted to instruct the jury on legal terms, the trial court's interruptions and limitations on the summation were proper.[17]

---

[17] I note the court also interrupted the prosecutor's summation for a similar reason:

| | |
|---|---|
| [PROSECUTOR]: | When you point a gun from one foot away; closer than we're right here, and you pull that trigger, you know what's going to happen. That's not reckless. That's what the defendant wants you to believe. That is not simply reckless conduct. You intend the natural consequences of your actions. |
| [DEFENSE COUNSEL]: | Objection. |
| THE COURT: | Sustained. |

Accordingly, the state court cannot be said to have unreasonably applied federal law in denying Claim 5.

### 2.    *Claims Raised in § 440 Motion (Claims 6-8)*

### a.    **Legally Insufficient Evidence (Claim 6)**

Petitioner asserts the evidence adduced at trial was legally insufficient to support his conviction for depraved indifference murder as the law stood at the time his conviction became final. Specifically, Petitioner argues that "there was no proof at trial of the element of depravity," which was interpreted as "an additional element beyond the recklessness of the act" at the time his conviction became final. (§ 440 Aff. ¶¶ 8-9). Respondent contends this claim is barred by an independent and adequate state procedural rule. (See Resp't Mem., at 78-97).

### i.    *Independent and Adequate State Procedural Rule*

The trial court's written decision on the motion represents the last-reasoned state court decision to address Claim 6. See Ylst, 501 U.S. at 803. It is clear from this decision that the court denied the claim pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c).[18] (Sept. 28, 2007

---

| | |
|---|---|
| [DEFENSE COUNSEL]: | I ask for a mistrial. |
| THE COURT: | That's not the definition of intent. That's denied [counselor]. Please . . . let me define what intent is. |

(Id. at 1767-69).

[18]

> [T]he court must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him.

N.Y. Crim. Proc. Law § 440.10(2)(c).

33

Decision & Order, at 2-3).  While the court also went on to deny the claim on the merits, (id. at

3-5), its primary reliance on this state procedural rule constitutes an independent ground for its

decision, see Harris, 489 U.S. at 264 n.10 (state court decision that relies on a procedural rule to

dismiss a claim, but which, in the alternative, also proceeds to dismiss the claim on the merits,

relies on the independent state law ground for dismissal); Fama v. Comm'r of Corr. Servs., 235

F.3d 804, 810 n.4 (2d Cir. 2000) (noting that when a state court opines that a claim is "not

preserved for appellate review" and then rules "in any event" that the claim also fails on its

merits, the claim rests on the independent state law rule which may preclude federal *habeas*

review).

It is also well-settled that, where a claim is sufficiently based in the record, a state court's

reliance on § 440.10(2)(c) constitutes an adequate state law ground that ordinarily precludes a

federal court from further *habeas* review.  See, e.g., Murden v. Artuz, 497 F.3d 178, 195-96 (2d

Cir. 2007).  A claim of legally insufficient evidence is adequately based in the record of the trial.

Accordingly, the trial court's reliance on § 440.10(2)(c) to deny Claim 6 establishes that the

claim is procedurally defaulted.

### ii.   *Circumvention of Procedural Default*

A federal *habeas* court may yet review a petitioner's procedurally defaulted claim if the

petitioner can show cause for the default and resulting prejudice, or that a fundamental

miscarriage of justice would result if the claim remains unreviewed.  See, e.g., Schlup, 513 U.S.

at 298; Harris, 489 U.S. at 262; Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Sweet v. Bennett,

353 F.3d 135, 140 (2d Cir. 2003).

Petitioner argues that cause and prejudice will excuse the procedural default applicable to

Claim 6.  First, Petitioner argues that a "new interpretation of a statute" applies to this claim, and

that this new interpretation came about after the time that counsel filed his appellate brief.  (Pet'r Reply Affirm. ¶ 84 (emphasis omitted)).  Second, Petitioner raises a separate claim of ineffective assistance of appellate counsel for counsel's failure to raise this claim on direct appeal (Claim 10).  This claim may be liberally construed to also assert cause for this procedural default.

Finally, Petitioner raises a separate claim of actual innocence (Claim 8).  This claim may be liberally construed as an effort to circumvent the procedural bar applicable to Claim 6 through the fundamental miscarriage of justice gateway.

### *1.*   **Cause and Prejudice Gateway**

Cause may only be demonstrated by showing "that some objective failure external to the defense impeded counsel's efforts to comply with the State's procedural rule."  Murray v. Carrier, 477 U.S. 478, 488 (1986).  This failure "must be something *external* to the petitioner, something that cannot fairly be attributed to him."  Coleman, 501 U.S. at 753 (emphasis in original).  "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures."  Reed v. Ross, 468 U.S. 1, 16 (1984).  If, however, "the basis of a constitutional claim [was] available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default."  Engle v. Isaac, 456 U.S. 107, 134 (1982); see also Bousley, 523 U.S. at 623 (quoting Engle, 456 U.S. at 130 n.35) (internal quotation marks omitted) ("'futility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time'").  Additionally, attorney error may establish cause if it rises to the level of ineffective assistance of counsel.  Aparicio v. Artuz, 269 F.3d 78, 91 (2d

Cir. 2001). Where a petitioner fails to establish cause to excuse a procedural default, the court need not determine whether he suffered prejudice. McClesky v. Zant, 499 U.S. 467, 502 (1991).

### a.    *Novelty of Claim*

There is disagreement among courts in this Circuit as to whether the evolving nature of New York's depraved indifference murder law is itself sufficient to establish cause to circumvent a procedural default. Of the courts to consider this issue, the majority have rejected such arguments and have identified a number of factors indicating such claims were not "novel" to the New York bar at the time.[19] Considering the state of the law at the time Petitioner's counsel filed his appellate brief, I agree with the majority and conclude that Petitioner's legal insufficiency argument was reasonably available for argument on direct appeal.

---

[19] Johnson v. Bellnier, No. 09-cv-0381, 2011 WL 3235708, at *9-10 (E.D.N.Y. July 27, 2011) (Matsumoto, J.) (not novel in 2003); Wells v. Perez, No. 10-cv-1107, 2011 WL 1453925, at *8-9 (S.D.N.Y. Apr. 14, 2011) (Cote, J.), notice of appeal docketed, 10-cv-1107 (S.D.N.Y. May 10, 2011) (Docket No. 23) (not novel in 2005); Sanchez v. Lee, No. 10-cv-7719, 2011 WL 924859, at *23-27 (S.D.N.Y. Mar. 16, 2011) (Peck, M.J.), Report & Recommendation adopted, 2011 WL 3477314 (S.D.N.Y. Aug. 8, 2011) (Castel, J.), certificate of appealability issued, 10-cv-7719 (S.D.N.Y. Aug. 11, 2011) (Docket No. 22) (not novel in 2004); Gutierrez v. Smith, No. 06-cv-4939, 2010 WL 3855225, at *7-8 (E.D.N.Y. Sept. 27, 2010) (Feuerstein, J.) (not novel in 2001); Lisojo v. Rock, No. 09-cv-7928, 2010 WL 1223086, at *25-27 (S.D.N.Y. Mar. 31, 2010) (Peck, M.J.), Report & Recommendation adopted, 2010 WL 1783553 (S.D.N.Y. Apr. 29, 2010) (McMahon, J.), mot. for certificate of appealability denied, 09-cv-7928, 10-2446-pr (2d Cir. Dec. 7, 2010) (Docket No. 30) (not novel in 2003); Flores v. Rivera, No. 06-cv-13517, 2009 WL 1110578, at *6-7 (S.D.N.Y. Apr. 23, 2009) (Swain, J.), certificate of appealability issued, 06-cv-13517 (S.D.N.Y. Apr. 27, 2009) (not novel in 2002); see also Brown v. Ercole, 353 F. App'x 518, 520 (2d Cir. 2009) (rejecting argument that raising claim in 2003 would have been futile); DiSimone v. Phillips, 461 F.3d 181, 191 (2d Cir. 2006) (rejecting argument that raising claim in 2002 would have been futile); but cf. Fernandez v. Smith, 558 F. Supp.2d 480, 493-94 (S.D.N.Y. 2008) (Chin, J.) ("given the evolving state of the law on the definition of 'depraved indifference' at the time," counsel could not be expected to be more specific than argue only that the evidence was legally insufficient to sustain a depraved indifference murder conviction in 2003); contra Petronio v. Walsh, 736 F. Supp.2d 640, 656-57 (E.D.N.Y. 2010) (Spatt, J.) (finding argument that a defendant may only be convicted of depraved indifference murder in a few, rare circumstances where one person is endangered was not an argument reasonably available to counsel until after Suarez was decided).

First, as discussed above, by the time counsel filed the appellate brief in 2005, the New York Court of Appeals had already decided <u>Hafeez</u>, <u>Gonzalez</u>, and <u>Payne</u>. These three cases altered, in part, the interpretation of the depraved indifference murder law. The cases were concerned with distinguishing the *mens rea* requirements for depraved indifference and intentional murder. However, <u>Payne</u> also reminded counsel of the limited precedent in which one-on-one killings had previously been held sufficient to constitute depraved indifference murder. <u>See</u> <u>Payne</u>, 3 N.Y.3d at 270-72. Although <u>Suarez</u> later expanded on this to explain that the element of depravity itself could not be found in such one-on-one situations unless they also involved those rare circumstances, it is reasonable to conclude that this specific argument was not "novel" after <u>Payne</u>. <u>Cf.</u> <u>Flores</u>, 2009 WL 1110578, at *6 (suggesting that the novelty of a claim involving New York's depraved indifference murder law may depend on the specific argument raised, and determining only that a claim arguing that "the evidence could support only a finding of intentional murder," was not a novel claim in 2002).

Second, law journal and law review articles, as well as several dissenting opinions from Judges on the New York Court of Appeals issued prior to the time counsel filed the appellate brief, criticized the interpretation of the law at the time. Those publications and opinions also argued that the element of depravity should constitute the subjective mental state for the offense. <u>See</u> <u>Lee</u>, 2011 WL 924859, at *25-27 (citing, among other things, dissenting opinions in <u>Register</u> and <u>Sanchez</u>, as well as articles published in 1989, 1990, and 2002). Other courts have held that even this specific argument – that the evidence adduced at trial may be insufficient to support the element of depravity as a culpable mental state – was not a novel claim in as early as 2002. <u>See, e.g.</u>, <u>Wells</u>, 2011 WL 1453925, at *8-9 (not novel in 2005); <u>Lee</u>, 2011 WL 924859, at *23-27 (not novel in 2004); <u>see also</u> <u>People v. Jean-Baptiste</u>, 11 N.Y.3d 539, 544 (2008)

(emphasis added) ("Here, . . . the defendant made a specific motion to dismiss for legal

insufficiency at trial [in 2003], *anticipating the change in the law brought by Feingold*.); cf.

Lampon v. LaValley, No. 10-cv-2591, 2011 WL 684623, at *7 (E.D.N.Y. Feb. 16, 2011)

(Cogan, J.) ("[t]here is no legal reason . . . that petitioner's counsel could not have made the

same objection [in 2002] as Jean-Baptiste's counsel" regarding the subjective mental state of the

depraved indifference murder law).

Accordingly, Petitioner cannot establish cause to circumvent his procedural default

through this gateway.

### b.    *Ineffective Assistance of Counsel*

Petitioner's filings may be liberally construed to assert ineffective assistance of appellate

counsel as cause for the procedural default applicable to Claim 6.  However, for the reasons set

forth with respect to Claim 10, (see Discussion infra Part III(C)(3)(b)), appellate counsel was not

ineffective.  Accordingly, Petitioner cannot establish cause to circumvent his procedural default

through this gateway.

### 2.    **Fundamental Miscarriage of Justice Gateway**

Petitioner raises a separate claim of actual innocence within his petition (Claim 8).  This

claim may be liberally construed as an effort to circumvent the procedural bar applicable to

Claim 6 through the fundamental miscarriage of justice gateway.

A petitioner may circumvent a procedural default if he can "show that 'a constitutional

violation has probably resulted in the conviction of one who is actually innocent.'"  Schlup, 513

U.S. at 327 (quoting Murray, 477 U.S. at 496).  "To establish the requisite probability, the

petitioner must show that it is more likely than not that no reasonable juror would have

convicted him in the light of the new evidence."  Id.  "'[A]ctual innocence' means factual

innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623-24.  Accordingly, this exception is "extremely rare" and should only be applied in "extraordinary case[s]." Schlup, 513 U.S. at 321-22.

In this case, Petitioner does not base his actual innocence claim upon new evidence not presented at trial.  Rather, he bases it upon the new interpretation of the depraved indifference murder statute brought about by Suarez.  (See Pet'r Reply Affirm. ¶ 68).

There is significant disagreement among courts in this Circuit that have considered the actual innocence gateway in the context of New York's changing depraved indifference law. Some courts have concluded that an intervening change in the law cannot constitute "new" evidence and is therefore insufficient to show the requisite factual innocence necessary to circumvent a state court's independent reliance on an adequate procedural bar.  See Lee, 2011 WL 3477314, at *3-6; Wells, 2011 WL 1453925, at *9; Lampon, 2011 WL 684623, at *10-11; Guiterrez, 2010 WL 3855225, at *8-10; Lisojo, 2010 WL 1223086, at *27-29.  I agree with those courts that have held otherwise.  Johnson, 2011 WL 3235708, at *11-15; Petronio, 736 F. Supp.2d at 657-59; Fernandez, 558 F. Supp.2d at 494; cf. Aug. 11, 2011 Corrected J., Lee, 10-cv-7719 (S.D.N.Y. Aug. 11, 2011) (Docket No. 22) (issuing certificate of appealability "only with regard to the question of whether, assuming petitioner's insufficiency claim is procedurally barred, the miscarriage of justice exception applies"); Mar. 10, 2010 Order, Garbutt v. Conway, No. 05-cv-9898 (S.D.N.Y. Mar. 10, 2010) (Docket No. 30) (Stein, J.) (issuing certificate of appealability to challenge District Court's holding that no miscarriage of justice would result from Court's reliance on procedural default, despite changing interpretation of depraved indifference law).

39

As Judge Matsumoto recently explained in <u>Johnson</u>, the Supreme Court's decision in <u>Bousley v. United States</u> strongly supports this interpretation.  In <u>Bousley</u>, the petitioner pled guilty to a drug trafficking offense, in violation of 21 U.S.C. § 841(a)(1), as well as to "using" a firearm "during and in relation to a drug trafficking crime," in violation of 18 U.S.C. § 924(c)(1). <u>Bousley</u>, 523 U.S. at 616.  In his <i>habeas</i> petition, the petitioner argued that no evidence was presented to show a "connection between the firearms in the bedroom of the house, and the garage, where the drug trafficking occurred."  <u>Id.</u> at 617.  While his appeal was pending, the Supreme Court re-interpreted the "use" element of the firearms offense, "requir[ing] the government to show 'active employment of the firearm.'"  <u>Id.</u> (quoting <u>Bailey v. United States</u>, 516 U.S. 137, 144 (1995)).  The Court found that the petitioner's argument was procedurally defaulted due to his failure to raise the claim on direct appeal.  <u>Id.</u> at 621-23.  It also rejected the petitioner's cause and prejudice argument.  <u>Id.</u> at 622-23.  However, the Court remanded the case in order to permit the petitioner to "attempt to make a showing of actual innocence" by demonstrating "that he did not 'use' a firearm as that term is defined in <u>Bailey</u>."  <u>Id.</u> at 623, 624.

Subsequent Second Circuit decisions have interpreted <u>Bousley</u> as permitting use of the actual innocence gateway when an intervening change in the law occurred prior to the time that a petitioner's conviction became final.  <u>See Johnson</u>, 2011 WL 3235708, at *12-13 (discussing <u>Fountain v. United States</u>, 357 F.3d 250, 254 (2d Cir. 2004); <u>DeJesus v. United States</u>, 161 F.3d 99, 103-04 (2d Cir. 1998); <u>Rosario v. United States</u>, 164 F.3d 729, 733-35 (2d Cir. 1998)). Accordingly, as Judge Matsumoto concluded in <u>Johnson</u>, "[w]hereas new evidence may be required to establish an actual innocence claim in most cases, no new evidence is required when such claim is premised on an intervening change in the law."  <u>Id.</u> at *13.

The procedural posture of this case is similar to the petitioner in <u>Johnson</u>. Both petitioners were found guilty and were sentenced after <u>Hafeez</u> was decided. The Second Department affirmed both convictions on the same day in 2005, after <u>Payne</u> was decided but prior to the <u>Suarez</u> decision. Leave to appeal was also denied by the New York Court of Appeals to both petitioners after <u>Suarez</u> was decided but prior to the <u>Feingold</u> decision. Finally, both convictions became final before the Court of Appeals decided <u>Feingold</u>. Because the changes to the depraved indifference murder law brought about by <u>Hafeez</u>, <u>Gonzalez</u>, <u>Payne</u>, and <u>Suarez</u> were significant, and because the petitioner in <u>Johnson</u> could establish that he was actually innocent of that offense under that quartet's interpretation of the law, Judge Matsumoto held that a fundamental miscarriage of justice would result if the merits of the petitioner's legal insufficiency claim were not reviewed. Likewise, as discussed below, I determine that the evidence presented at Petitioner's trial cannot support a conviction of depraved indifference murder as the law stood after <u>Hafeez</u>, <u>Gonzalez</u>, <u>Payne</u>, and <u>Suarez</u>. Accordingly, I conclude – and respectfully recommend that Your Honor should conclude – that a fundamental miscarriage of justice would occur if the Court did not excuse the procedural default applicable to Claim 6.

### iii.   *Merits of Claim 6*

#### *1.*   **Standard of Review**

Before I address the merits of Petitioner's legal insufficiency claim, I must first determine whether to apply the deferential AEDPA, or otherwise a *de novo,* standard of review. Where the state court has adjudicated the merits of a claim, the AEDPA standard of review applies. 28 U.S.C. § 2254(d). A *habeas* court will only review a claim *de novo* when the state court "did not reach the merits" of the federal claim. <u>Cone</u>, 129 S. Ct. at 1784. In this case, the trial court denied Claim 6 on procedural grounds. However, it went on to find "in any event"

41

that the claim also failed on its merits. (Sept. 28, 2007 Decision & Order, at 3). This alternative holding constitutes a decision on the merits which requires application of AEDPA's deferential standard of review. Zarvela v. Artuz, 364 F.3d 415, 417 (2d Cir. 2004) (per curiam); cf. Bell v. Miller, 500 F.3d 149, 155 (2d Cir. 2007); Fernandez, 558 F. Supp.2d at 504.

### 2.    Applicable Law

"[T]he Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." Jackson v. Virginia, 443 U.S. 307, 315 (1979) (internal quotation omitted). However, on *habeas* review, a claim of legally insufficient evidence will not succeed where, "after viewing the evidence in the light most favorable to the prosecution *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. A *habeas* petitioner, therefore, "bears a very heavy burden" to show that no rational jury could have found the substantive elements of the offense beyond a reasonable doubt and succeed on such a claim. Fama, 235 F.3d at 811 (internal quotation omitted).

"[W]hen it considers the sufficiency of the evidence of a state conviction, a federal court must look to state law to determine the elements of the crime." Id. The New York Court of Appeals has determined that Feingold does not apply retroactively to convictions that were already final at the time Feingold was decided. Policano, 7 N.Y.3d at 603-04. However, the Second Circuit has recently and explicitly confirmed that a *habeas* court must apply "the law as it existed at the time [the petitioner]'s conviction became final." Rivera v. Cuomo, No. 10-224, 2011 WL 3447445, at *5 (2d Cir. Aug. 9, 2011). This includes those cases among the quartet of pre-Feingold cases which were decided prior to the time that a petitioner's conviction became

42

final. See id. at *5-9 (under the law that existed at the time the petitioner's conviction became final – which included Hafeez and Gonzalez – the evidence was legally insufficient to support the conviction); see also Johnson, 2011 WL 3235708, at *17.

### 3.    Analysis

As discussed above, under Hafeez, Gonzalez, and Payne, a conviction for depraved indifference murder cannot be sustained where the evidence demonstrated only "'a manifest intent to kill,' thereby negating the core element of recklessness." McMillon, 816 N.Y.S.2d at 171.[20] Under Suarez, a conviction for depraved indifference murder also cannot be supported where the evidence "fail[ed] to establish the required level of depravity and indifference." Id. In this case, Petitioner argues that the evidence at trial failed to establish the requisite level of depravity. Viewing the evidence in the light most favorable to the prosecution, I conclude that Petitioner's act "was either undoubtedly intentional or accidental" and therefore cannot, in any way, support beyond a reasonable doubt a conviction for depraved indifference murder as the law stood at the time Petitioner's conviction became final. Rivera, 2011 WL 3447445, at *6.

#### a.    *Intentional Killing Theory*

First, as in Rivera, a jury could have accepted the prosecutor's theory and found that Petitioner intentionally killed Donaldson.[21] The prosecution presented an eyewitness who

---

[20] The Second Department's decision in McMillon was decided on May 30, 2006. This was twenty-nine days after Petitioner's conviction became final. However, McMillon itself does not alter the interpretation of New York's depraved indifference murder law. I therefore cite to McMillon "only to the extent that [it] provide[s] a clarification of pre-existing law." Rivera, 2011 WL 3447445, at *5 (citing Henry v. Ricks, 578 F.3d 134, 138 (2d Cir. 2009); Policano, 7 N.Y.3d at 603-04).

[21] Indeed, a review of the prosecutor's summation reveals that this was the theory under which Petitioner was tried. Specifically, the prosecutor made numerous arguments that Petitioner's conduct showed only his intent to kill, and not merely recklessness. (Trial Tr., at

testified he saw Petitioner approach Donaldson's car, exchange heated words for a few seconds, pull a gun out of his pocket, raise the gun, point the gun at Donaldson's head, lower the gun, raise the gun a second time, and pull the trigger when the gun was pointed at Donaldson's head. Evidence was also presented to show that Donaldson had recently beaten Petitioner up and that Petitioner was embarrassed and angry at Donaldson. "After Hafeez, however, such a quintessentially intentional attack could no longer be categorized as depraved indifference murder." Id. (internal quotation marks and citation omitted). Accordingly, under this view of the evidence, no rational jury could find Petitioner guilty beyond a reasonable doubt of depraved indifference murder.

### b.    *Accidental Killing Theory*

Second, and in contrast to the prosecution's theory at trial,[22] a jury could have accepted Petitioner's testimony and found that he did not intend to kill Donaldson, and that the gun had accidentally discharged. However, under this view, the evidence at trial is still insufficient to support a depraved indifference murder conviction. Merely carrying a loaded and operable

---

1767-69; see also id. at 1774 ("Now, what I want to do is just spend a few minutes discussing the main topics here. That would be credibility and intent."); id. at 1806-12 (arguing evidence showed intent to kill)). The summation also reveals that the prosecutor attempted to portray depraved indifference murder as a lesser offense of intentional murder – the exact problem that the Court of Appeals sought to end with its pre-Feingold decisions. (See id. at 1773 (emphasis added) (stating that Petitioner's confession "gives you all you need to convict him, *at the very least* on the depraved indifference homicide"); id. at 1811 (emphasis added) ("His actions before, during, and after, ladies and gentlemen, tell you that *at the very least*, he's committed a depraved indifference murder . . . .")); see also Payne, 3 N.Y.3d at 271 (describing improper use by state prosecutors of depraved indifference murder as a "fallback theory" for intentional murder).

[22] The prosecutor argued in summation that the theory by the defense – that Petitioner accidentally fired the gun – was contrary to the credible evidence presented at trial. (See, e.g., Trial Tr., at 1773-74, 1775-78).

weapon or displaying it during "a contentious confrontation," is insufficient to establish the

requisite level of depravity, because it "is not so wanton, so deficient in a moral sense of

concern, so devoid of regard of the life or lives of others . . . as to render a resulting death

depraved indifference." Id. at *7-8 (internal quotation marks and citations omitted).

> The Court of Appeals in Suarez clearly held that "a defendant may be
> convicted of depraved indifference murder when but a single person is endangered
> in only a few rare circumstances," such as when "the defendant intends neither to
> seriously injure, nor to kill, but nevertheless abandons a helpless and vulnerable
> victim in circumstances where the victim is highly likely to die," when "the
> defendant – acting with a conscious objective not to kill but to harm – engages in
> torture or a brutal, prolonged and ultimately fatal course of conduct against a
> particularly vulnerable victim," or "in a few other extraordinary cases involving
> conduct that endangered only one person, where the evidence showed not just
> recklessness, but depraved indifference to human life," such as when a defendant
> "fired at point-blank range without knowing whether the bullet was a live or dummy
> round." "Where comparable facts are not shown, however, a jury is foreclosed, as
> a matter of law, from considering depraved indifference murder charge whenever
> death is the result of a one-on-one confrontation."

Johnson, 2011 WL 3235708, at *21 (quoting Suarez, 6 N.Y.3d at 212-13).  The facts of

Petitioner's case simply do not fit into these "rare circumstances" where depraved indifference

has been found in a one-on-one killing.

Depravity is more often found in situations in which more than one person is

indiscriminately endangered.

> Quintessential examples are firing into a crowd; driving an automobile along a
> crowded sidewalk at high speed; opening the lion's cage at the zoo; placing a time
> bomb in a public place; poisoning a well from which people are accustomed to draw
> water; opening a drawbridge as a train is about to pass over it and dropping stones
> from an overpass onto a busy highway.

Suarez, 6 N.Y.3d at 214 (internal citations omitted).  However, "the mere presence of third

persons at the scene of a killing does not convert an intentional homicide directed at a particular

victim into depraved indifference murder unless others are *actually endangered*." Id. at 213 n.7

(emphasis in original). The shooting in this case occurred on a public street in the daytime. However, a review of the transcripts reveals no facts that would support a finding that bystanders were in any actual danger.[23]

People v. McMillon is also persuasive. Like Petitioner, McMillon took out a gun and shot his victim once from a short distance away. McMillon, 816 N.Y.S.2d at 170. Like Petitioner, McMillon later confessed to police that he killed the victim, but stated he did not intend to kill him and that the gun had accidentally fired. Id. Like Petitioner, McMillon was acquitted of intentional murder and convicted of depraved indifference murder. However, in McMillon, the Second Department held that this evidence was legally insufficient to support a conviction for depraved indifference murder. Specifically, the court held that, *after* Suarez, such evidence was insufficient "not because the evidence demonstrated a manifest intent to kill, but only because *it failed to establish the depravity and indifference to human life required* for the commission of the crime." Id. at 173 (emphasis added).

I note that one court in this Circuit has reached the opposite conclusion in the accidental killing context. In Gaskin v. Graham, No. 08-cv-1124, 2009 WL 5214498, at *2-3 (E.D.N.Y. Dec. 30, 2009) (Bianco, J.), the petitioner shot the victim in the head at close range, and also presented evidence at trial that the shooting was accidental. On *habeas* review, Judge Bianco

---

[23] The witness who observed the shooting did not testify about other individuals in the area. (See Trial Tr., at 659-88). The witness who provided aid to Donaldson after he was shot testified that there were "folks" in the area who "were in a state of distress and running." (Id. at 697). He also testified that there were other cars on the road. (Id. at 695; see also id. at 1453 (Petitioner testified there may have been other cars on the road)). However, the witness did not elaborate on where the individuals and the cars were located in relation to the shooting. (See id. at 693-716). Accordingly, such evidence does not compare to a depraved indifference murder conviction in which the evidence shows, for example, that the defendant fired a gun indiscriminately into a crowd. See Suarez, 6 N.Y.3d at 214.

denied the writ and cited McMillon as *authority* for his holding that such facts are *sufficient* to show depraved indifference. Gaskin, 2009 WL 5214498, at *11. I respectfully disagree with this analysis. A plain reading of McMillon reveals that the Second Department held such facts were *insufficient* to show depravity.

Moreover, I note that the additional authorities cited in Gaskin, in support of its holding that an accidental killing may establish depraved indifference, are unpersuasive. See id. at *11 (citing People v. Casiano, 837 N.Y.S.2d 76, 77 (App. Div. 2007), People v. Patterson, 834 N.Y.S.2d 18, 18 (App. Div. 2007), People v. Suphal, 830 N.Y.S.2d 474, 477 (Sup. Ct. 2006), Maggiore v. United States, 302 F. App'x 17, 20 (2d Cir. 2008), and People v. Castellano, 837 N.Y.S.2d 643, 643 (App. Div. 2007)).

In Casiano, the defendant aimed a gun at a cab driver, told the driver she would shoot him if he did not give her his money, told the driver she would shoot him if he opened his door, and then fired the gun once, killing the driver after he opened his door. Casiano, 837 N.Y.S.2d at 77. The First Department held that any legal insufficiency argument was unpreserved for appellate review, but stated that if it did review the claim, it would find the evidence legally sufficient. Id. Casiano supported this alternative holding by citing only to Patterson, a case also relied upon in Gaskin. Id. However, unlike the petitioners in Gaskin and in the instant case, as well as unlike the defendant in Casiano, the defendant in Patterson admitted at trial that he fired his gun "while looking away from the victim." Patterson, 834 N.Y.S.2d at 432. As discussed above, such indiscriminate endangerment *can* support a conviction for depraved indifference murder because it shows "one simply doesn't care whether grievous harm results or not." Suarez, 6 N.Y.3d at 214. However, such facts are absent in Gaskin and Casiano, as well as in Petitioner's case.

47

Castellano is similarly distinguishable. In that case, the defendant "swung a knife wildly in an effort to free himself" from the grasp of two individuals. Castellano, 837 N.Y.S.2d at 644. Such conduct is also more analogous to indiscriminate endangerment than the facts presented in Gaskin or Petitioner's cases. See id. (citing, among other authority, Suarez, 6 N.Y.3d at 214, and noting that, "The act of wildly flailing a knife at multiple persons, without intending to kill or injure, is . . . akin to the classic depraved indifference situations of firing a gun into a crowd or driving an automobile along a crowded sidewalk.").

In Maggiore, the petitioner admitted that he drove a gang member in his car while looking for the victim, that he did not know that the gang member intended to kill the victim, and that he knew that the gang member was armed and wanted to find the victim in order to retaliate in some way. Maggiore, 302 F. App'x at 19. The petitioner argued that his attorney was ineffective for failing to move to withdraw his guilty plea after Hafeez was decided. Id. at 18-20. As discussed above, Hafeez was concerned with the distinction between the *mens rea* required for intentional and depraved indifference murder. This case simply does not lend support to any holding that, under Suarez, an accidental killing is sufficient to show depravity.

Finally, in Suphal, the petitioner testified that he shot the victim once in the shoulder in order to "scare" him and to prevent him from pulling out his own weapon and using it against the petitioner. The petitioner testified that he did not intend to kill or injure the victim. He also testified that he fired several additional shots while chasing the victim because he did not believe that the victim was hit. Suphal, 830 N.Y.S.2d at 477-78. The petitioner's conviction in Suphal, however, became final in 2004 – after Hafeez and Gonzalez only. Suphal is accordingly insufficient to support any holding that, under Suarez, an accidental killing is sufficient to show depravity.

48

Indeed, prior to Suarez, the state courts were not consistent in their holdings regarding accidental killings and depraved indifference murder. Compare, e.g., People v. Rosario, 617 N.Y.S.2d 887 (App. Div. 1994) (evidence showing defendant drew a loaded gun, aimed it at victim, and accidentally fired it from seven feet away was sufficient to support depraved indifference murder conviction), and People v. Santana, 558 N.Y.S.2d 172 (App. Div. 1990) (evidence showing defendant drew a loaded gun, aimed it at victim, and pulled trigger while gun was one inch from victim's head was sufficient to support depraved indifference murder conviction "[r]egardless of whether the defendant accidentally or intentionally discharged the gun"), with People v. Magliato, 494 N.Y.S.2d 307 (App. Div. 1985) (evidence showing defendant accidentally exerted enough pressure on trigger to fire gun and kill victim was insufficient to support depraved indifference murder conviction).

Accordingly, under this alternative view of the evidence, in light of Suarez, and as demonstrated by McMillon, no rational jury could find beyond a reasonable doubt the requisite depravity in Petitioner's case. Therefore, Petitioner's depraved indifference murder conviction "cannot constitutionally stand." Jackson, 443 U.S. at 318. I thus conclude – and respectfully recommend that Your Honor conclude – that the state court's denial of Claim 6 was contrary to Jackson and that a writ of *habeas corpus* should be granted on this basis.

> **b.    Ineffective Assistance of Trial Counsel for Failure to Request Jury Instruction (Claim 7)**

Petitioner asserts he was denied his right to the effective assistance of counsel when his trial attorney failed to request a jury instruction on the element of "depravity." Specifically, Petitioner argues that his trial attorney "failed to request [the] jury instruction under Suarez

49

because [that] ruling was handed down after Petitioner's conviction." (Pet'r Reply Affirm. ¶ 87).  Respondent contends this claim is procedurally barred.  (See Resp't Mem., at 98-102).

The trial court's written decision on Petitioner's § 440.10 motion represents the last-reasoned state court decision to address Claim 7.  See Ylst, 501 U.S. at 803.  Like Claim 6, it is clear from this decision that the court denied Claim 7 pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c).  (Sept. 28, 2007 Decision & Order, at 2-3).  While the court also went on to deny the claim on the merits, (id. at 3-5), its primary reliance on this state procedural law constitutes an independent and adequate ground for its decision, see Harris, 489 U.S. at 264 n.10; Murden, 497 F.3d at 195-96; Fama, 235 F.3d at 810 n.4.  Here, any issues related to counsel's requests for jury instructions are based in the record of the trial.  Accordingly, the state court's reliance on § 440.10(2)(c) to deny Claim 7 precludes this Court from further review absent a showing of cause and prejudice or a fundamental miscarriage of justice.

Petitioner's filings may be liberally construed to allege cause and prejudice for this procedural default.  Specifically, Petitioner argues that a "new interpretation of a statute" occurred.  (Pet'r Reply Affirm. ¶ 84 (emphasis omitted)).  However, for substantially the same reasons identified in Claim 6, I find that such a request was not "novel" at the time counsel filed Petitioner's appellate brief in 2005.  Accordingly, Petitioner cannot establish cause to circumvent his failure to raise this claim on direct review.  Therefore, this Court may not reach the merits of Claim 7 through the cause and prejudice gateway.[24]

---

[24] I note that although Petitioner specifically raises a claim of ineffective assistance of appellate counsel for appellate counsel's failure to raise Claim 6 on direct appeal, Petitioner does not raise a similar argument with respect to Claim 7.

Additionally, Petitioner raises a separate claim of actual innocence within his petition (Claim 8). This argument may also be liberally construed as a means of avoiding the procedural bar applicable to Claim 7 through the fundamental miscarriage of justice gateway. Because I have determined that this gateway applies to excuse the procedural default applicable to Claim 6, I also address Claim 7 on its merits pursuant to AEDPA's standard of review.[25]

The Counsel Clause of the Sixth Amendment of the United States Constitution provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. The Supreme Court has construed this clause to afford criminal defendants the right to the *effective* assistance of counsel. See McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970). A petitioner's ineffective assistance of counsel claim will succeed on the merits if the petitioner proves (1) that counsel's representations "fell below an objective standard of reasonableness," as measured under "prevailing professional norms," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694.

*Habeas* petitioners bear the burden of proving both prongs of the Strickland test. He or she must therefore prove that his or her attorney's actions were objectively unreasonable as well as that he or she was prejudiced to the extent that there exists a reasonable probability that the result of the proceeding would have been different. Strickland, 466 U.S. at 689, 693. To show that an attorney's conduct was unreasonable, the petitioner must overcome "a strong

---

[25] As with Claim 6, the trial court denied Claim 7 on procedural grounds, and went on to find "in any event" that Claim 7 also failed on its merits. (Sept. 28, 2007 Decision & Order, at 5). As discussed above, this alternative holding constitutes a decision on the merits which invokes the deferential AEDPA, rather than a *de novo*, standard of review.

presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Additionally, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id.  Because a petitioner may succeed only by proving both Strickland prongs, "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

In this case, Petitioner cannot establish the first prong of Strickland.  It is well-settled that "[a]n attorney is not required to forecast changes or advances in the law." Sellan, 261 F.3d at 315 (internal quotation marks and citation omitted); see also Smith v. Murray, 477 U.S. 527, 536 (1986) (counsel not ineffective for failing "to anticipate a state appellate court's willingness to reconsider a prior holding").  "In assessing the attorney's performance, a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct.'" Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (quoting Strickland, 466 U.S. at 690).  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

Here, Petitioner's trial occurred after Hafeez was decided.  As discussed above, Hafeez was not concerned with establishing a new interpretation of "depravity."  Rather, it distinguished the *mens rea* requirements between intentional and depraved indifference murder.  The Register formulation was still the controlling law, and the Court of Appeals would not specifically hold

52

that the statute's depravity element involved something other than an objective, degree-of-risk calculation until Suarez and Feingold. Accordingly, Petitioner's attorney cannot be said to have been unreasonable for failing to request an instruction on "depravity" as it would later be interpreted by these cases. See Cruz v. Conway, No. 05-cv-4750, 2007 WL 1651855, at *7 (E.D.N.Y. June 6, 2007) (trial "[c]ounsel cannot be faulted for failing to anticipate the subsequent shift in New York['s depraved indifference murder] law"). The state court's denial of Claim 7 was therefore not an unreasonable application of Strickland.

### c.      Actual Innocence (Claim 8)

Petitioner asserts he is actually innocent of the offense of depraved indifference murder. To the extent he presents this argument as a freestanding claim, the claim is rendered moot in light of my recommendation that a writ of *habeas corpus* be issued with respect to Claim 6.

### 3.      *Claims Raised in* Error Coram Nobis *Petition (Claims 9-10)*

The Second Department's written decision denying Petitioner's *error coram nobis* petition represents the last-reasoned state court decision to address Claims 9 and 10. See Ylst, 501 U.S. at 803. It is clear the court summarily denied each claim by determining Petitioner "failed to establish that he was denied the effective assistance of counsel." (Ex. X). This decision constitutes a denial on the merits for purposes of AEDPA. See Brown, 283 F.3d at 498; see also, e.g., Doran v. Fischer, No. 06-cv-3638, 2009 WL 3381537, at *10 (E.D.N.Y. Oct. 20, 2009). Accordingly, I address Claims 9 and 10 under AEDPA's deferential standard of review.

### a.      Ineffective Assistance of Appellate Counsel for Failure to Move for Re-Argument (Claim 9)

Petitioner asserts he was deprived his right to the effective assistance of counsel for his appellate counsel's failure to seek re-argument in light of Suarez, which was decided after the

53

Second Department affirmed his conviction but before the Court of Appeals denied his leave to appeal. Respondent contends the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established federal law. (See Resp't Mem., at 48-49).

In this case, Petitioner fails to meet Strickland's first prong.[26] It is clear that there is no Sixth Amendment right to counsel for discretionary appeals. Ross v. Moffitt, 417 U.S. 600, 610-11 (1974). Accordingly, a *habeas* petitioner may not assert a claim of ineffective assistance of counsel for an attorney's failure to seek leave to file a discretionary appeal. Wainwright v. Torna, 455 U.S. 586, 587-88 (1982) (per curiam); see also Chalk v. Kuhlmann, 311 F.3d 525, 528 (2d Cir. 2002). In New York, a motion for re-argument is a request that the Appellate Division exercise its discretionary review power and reconsider its decision on appeal. N.Y. Crim. Proc. Law § 470.50(1).[27] "Since [petitioner] had no constitutional right to counsel" for this discretionary motion, "he could not be deprived of the effective assistance of counsel." Wainwright, 455 U.S. at 587-88. Therefore, the state court did not unreasonably apply Strickland in denying Claim 9.

### b.   Ineffective Assistance of Appellate Counsel for Failure to Raise a Claim of Legally Insufficient Evidence (Claim 10)

Petitioner asserts he was deprived of his right to the effective assistance of counsel for appellate counsel's failure to raise on direct review a claim of legally insufficient evidence to

---

[26] Although the Strickland test was formulated in the context of evaluating a claim of ineffective assistance of trial counsel, the same test is used with respect to claims alleging ineffective assistance of appellate counsel. See, e.g., Mayo, 13 F.3d at 533.

[27] "After its determination of an appeal . . . , an appellate court, in the interest of justice and for good cause shown, may *in its discretion*, upon motion of a party adversely affected by its determination, or upon its own motion, order a reargument or reconsideration of the appeal." N.Y. Crim. Proc. Law § 470.50(1) (emphasis added).

support the conviction for depraved indifference murder. Respondent contends this claim

remains unexhausted and, in any event, the state court's denial was neither contrary to, nor an

unreasonable application of, clearly established federal law. (See Resp't Mem., at 45-77).

i.    ***Exhaustion***

Respondent argues that in Petitioner's *error coram nobis* petition,

> [P]etitioner only argued that his appellate counsel was ineffective because, after the Appellate Division had affirmed petitioner's judgment of conviction and the New York Court of Appeals subsequently rendered its decision in People v. Suarez, 6 N.Y.3d 202 (2005), counsel did not then move to reargue petitioner's appeal on the ground that, based upon Suarez, the evidence did not support petitioner's depraved indifference murder conviction.

(Resp't Mem., at 45 (citing Error Coram Nobis Pet. ¶ 13)). Respondent contends that the

specific claim now raised – that appellate counsel was ineffective for failing to raise a legal

insufficiency of the evidence argument – was raised for the first time in Petitioner's letter

seeking leave to appeal to the New York Court of Appeals. (Id. at 45-46). As such, Respondent

contends that Claim 10 was not fully and fairly presented to the state courts. (Id. at 46 (citing

Castille v. Peoples, 489 U.S. 346, 351 (1989) (holding that where a claim has been presented for

the first time in a discretionary review application, the claim has not been fairly presented to

state courts)).

I have carefully reviewed Petitioner's *error coram nobis* petition and disagree with

Respondent. In his petition, Petitioner first stated that he initially "questioned [appellate

counsel]'s effectiveness as to why he did not raise the Payne issue in the brief on appeal." (Error

Coram Nobis Pet. ¶ 11). Petitioner then went on to state in his petition that although he

"accept[ed] [appellate counsel]'s explanation for not raising the Payne issue on appeal," (id. ¶

12), counsel nonetheless rendered ineffective assistance by failing to move for re-argument after

Suarez was decided, (id. ¶¶ 13-14, 18).  Petitioner then informed the state court that he had

communicated with his appellate counsel and that counsel suggested that Petitioner raise the

issue regarding counsel's failure to move for re-argument in his *error coram nobis* petition.  (Id.

¶ 13-14).  However, the substance of Petitioner's *error coram nobis* petition did not end there.

Petitioner then noted that his appellate counsel wrote Petitioner a second letter, in which counsel

suggested that Petitioner also "bring a claim that his appellate counsel should have raised an

argument regarding the sufficiency of the evidence, because trial counsel sought to have the

depraved count dismissed at the close of evidence because there was no proof beyond a

reasonable doubt as to depravity."  (Id. ¶ 16; see also id. ¶¶ 15-18).  Petitioner attached to the

petition this letter from his attorney, which advised Petitioner to raise an ineffective assistance of

appellate counsel claim regarding counsel's failure to argue on direct appeal that the evidence

was legally insufficient.  (See Mar. 16, 2007 Letter (Ex. N)).  Accordingly, a liberal reading of

Petitioner's *error coram nobis* petition suggests that Petitioner sufficiently asserted the factual

and legal bases for Claim 10, thereby fairly presenting the state courts with this argument.  I now

address Claim 10 pursuant to AEDPA's deferential standard of review.

### ii.    *Merits of Claim 10*

In this case, Petitioner cannot establish the first prong of Strickland.  Appellate counsel

"does not have a duty to advance every nonfrivolous argument."  Mayo, 13 F.3d at 533 (citing

Jones v. Barnes, 463 U.S. 745, 754 (1983)).  The failure to raise a legal argument on direct

appeal will constitute ineffective assistance only where the petitioner "shows that counsel

omitted significant and obvious issues while pursuing issues that were clearly and significantly

weaker."  Id.  "[T]he mere fact that counsel failed to recognize the factual or legal basis for a

claim, or failed to raise the claim despite recognizing it, does not constitute . . . constitutionally

56

deficient" performance of appellate counsel unless that claim was clearly stronger than the claims that were raised. Smith, 477 U.S. at 535 (internal citation and quotation marks omitted). Indeed, the Supreme Court has recognized the "importance of winnowing out weaker arguments on appeal and focusing on one central issue, if possible, or at most on a few key issues." Jones, 463 U.S. at 751-52.

In addition, as discussed in Claim 7 above, it is well-settled that "[a]n attorney is not required to forecast changes or advances in the law." Sellan, 261 F.3d at 315 (internal quotation marks and citation omitted). Here, appellate counsel filed the appellate brief after Hafeez, Gonzalez, and Payne were decided, but before Suarez and Feingold were. Under the state of the law at that time, appellate counsel should have realized that grounds existed to find legally insufficient a conviction for depraved indifference murder where the circumstances could only infer the specific intent to kill. Indeed, appellate counsel conceded that he recognized this aspect of the changing law in a letter to Petitioner. (Ex. N). However, Petitioner's defense at trial was that the gun fired accidentally and that Petitioner did not intend to fire it or to kill Donaldson. Given these facts, Petitioner's attorney cannot be said to have omitted a significant and obvious issue when he failed to raise a legal insufficiency of the evidence claim. At that time, although it was reasonably apparent that the interpretation of the law had changed, the Court of Appeals had not yet specifically held that the statute's depravity element involved something other than an objective, degree-of-risk calculation. Additionally, as discussed above, New York courts were not consistent in their holdings regarding depraved indifference murder and accidental killings before Suarez. Counsel's failure to predict the additional wrinkle that Suarez would add to the interpretation of this element was therefore not objectively unreasonable. See Cruz, 2007 WL

1651855, at *7 (trial "[c]ounsel cannot be faulted for failing to anticipate the subsequent shift in New York['s depraved indifference murder] law").

Moreover, I note that my finding that appellate counsel was not ineffective for failing to raise Claim 6 is not inconsistent with my earlier finding that Claim 6 was not a novel claim at the time (see Discussion supra Part III(C)(2)(a)(ii)(*1*)(*a*)).  Given that Register had not yet been expressly overturned, appellate counsel could have recognized the argument, yet "'reasonably believed that it would have been utterly futile'" to make. Lee, 2011 WL 924859, at *33 (quoting Gaskin, 2009 WL 5214498, at *23).

Accordingly, the state court's denial of Claim 10 did not unreasonably apply Strickland.  Further, because Petitioner cannot show that appellate counsel was ineffective, he cannot establish cause to circumvent the procedural bar applicable to Claim 6.

## IV. CONCLUSION

For the reasons set forth above, I conclude – and respectfully recommend that Your Honor should conclude – that the petition be **GRANTED** and that Petitioner's conviction for depraved indifference murder be **VACATED**.[28]

---

[28] It appears that the appropriate remedy in these circumstances is for the state court to reduce Petitioner's second degree murder conviction to the lesser-included offense of second degree (reckless) manslaughter. See, e.g., McMillon, 816 N.Y.S.2d at 173; cf. N.Y. Crim. Proc. Law § 470.15(2)(a) ("Upon a determination that the trial evidence is not legally sufficient to establish the defendant's guilt of an offense of which he was convicted but is legally sufficient to establish his guilt of a lesser included offense, the [intermediate appellate] court may modify the judgment by changing it to one of conviction for the lesser offense.").  In granting a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254, however, this Court need only direct that Petitioner's second degree depraved indifference murder conviction be vacated and the case remanded to the state courts for further proceedings not inconsistent with the Court's decision. See Johnson, 2011 WL 3235708, at *23; Fernandez, 558 F. Supp.2d at 505.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days, or a total of seventeen (17) days, from service of this Report and Recommendation to serve and file written objections.  See also Fed. R. Civ. P. 6(a), (b), (d).  Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Hon. Vincent L. Briccetti, at the Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.


Dated: September 2, 2011
       White Plains, New York


                                        Respectfully Submitted,


                                        _____
                                        Paul E. Davison
                                        United States Magistrate Judge
                                        Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:

The Hon. Vincent L. Briccetti
The Hon. Charles L. Brieant, Jr. Federal Building and United States Courthouse
300 Quarropas St.
White Plains, N.Y. 10601

Andrew Lyons, *pro se*
04-A-0627
Elmira Correctional Facility
1879 Davis St.
P.O. Box 500
Elmira, N.Y. 14901-0500

John James Sergi, Esq.
Office of the Westchester County District Attorney
111 Dr. Martin Luther King, Jr. Blvd.
White Plains, N.Y. 10601