UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ANDREW LYONS,                                          :
                         Petitioner,                    :

                                             :        **MEMORANDUM DECISION**

v.                                                     :

                                             :        07 CV 4597 (VB)

DARWIN LaCLAIRE, Warden, Great Meadow     :
Correctional Facility,                                 :
                         Respondent.                    :
-----------------------------------------------------------------x

Briccetti, J.:

       Before the Court is Magistrate Judge Paul E. Davison's Report and Recommendation

("Report"), dated September 2, 2011 (Doc. #31), on Andrew Lyons's petition for a writ of

habeas corpus.  Judge Davison recommended that the Court grant the petition.  Specifically,

Judge Davison found that the evidence presented at petitioner's trial cannot support a conviction

for depraved indifference murder as the law of New York stood at the time petitioner's

conviction became final.  Accordingly, Judge Davison concluded (1) that although petitioner's

insufficiency of the evidence claim was procedurally defaulted, the procedural default should be

excused because petitioner is actually innocent of depraved indifference murder, and (2) on the

merits, petitioner's depraved indifference murder conviction "cannot constitutionally stand."

       For the following reasons, the Court respectfully disagrees with the Report to the extent it

recommends excusing petitioner's procedural default on his insufficiency of the evidence claim

and otherwise concludes that petitioner's conviction was unconstitutional.  Therefore, the Report

is adopted in part and rejected in part, and the petition is DENIED.

**STANDARD OF REVIEW**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Parties may raise objections to the magistrate judge's report and recommendation, but they must be "specific[,] written," and submitted within 14 days after being served with a copy of the recommended disposition. Fed.R.Civ.P. 72(b)(2); 28 U.S.C. § 636(b)(1). A district court must conduct a <u>de novo</u> review of those portions of the report or specified proposed findings or recommendations to which timely objections are made. 28 U.S.C. § 636(b)(1)(C). The district court may adopt those portions of a report and recommendation to which no timely objections have been made, provided no clear error is apparent from the face of the record. <u>Lewis v. Zon</u>, 573 F.Supp.2d 804, 811 (S.D.N.Y. 2008); <u>Nelson v. Smith</u>, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates his original arguments. <u>Ortiz v. Barkley</u>, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008).

The objections of parties appearing <u>pro se</u> are "generally accorded leniency" and should be construed "to raise the strongest arguments that they suggest." <u>Milano v. Astrue</u>, 2008 WL 4410131, at *2 (S.D.N.Y. Sept. 26, 2008).[1] "Nonetheless, even a <u>pro se</u> party's objections to a Report and Recommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." <u>Pinkney v. Progressive Home Health Servs.</u>, 2008 WL 2811816, at *1 (S.D.N.Y. July 21, 2008) (quotation marks omitted).

---

[1]     Petitioner will be provided with copies of all unpublished opinions cited in this ruling. <u>See</u> <u>Lebron v. Sanders</u>, 557 F.3d 76, 79 (2d Cir. 2009).

## BACKGROUND

The following evidence was presented at trial.

At approximately 9:00 a.m. on October 7, 2002, petitioner was riding his bicycle on West 1st Street in Mount Vernon, New York.  As petitioner approached the intersection of West 1st Street and 11th Avenue, he heard a voice call out to him in a "teasing" or "disrespectful" manner.  In response, petitioner stopped, leaned his bike against a parking meter, and pulled a loaded handgun from his pocket.

Petitioner then saw Steven Donaldson sitting in a car stopped at a nearby stoplight. Petitioner knew Donaldson because several weeks earlier he and Donaldson had gotten into a fight.

Petitioner pulled the hammer back on the gun, creating what he described as a "hair trigger."  By doing so, petitioner reduced the amount of pressure required to pull the gun's trigger from 9½ pounds to 3¼ pounds.  Petitioner testified he knew the gun would fire more easily if the hammer was pulled back and cocked.  With the gun drawn and cocked, petitioner walked across the street toward Donaldson's car.

Donaldson was alone in the car and his driver-side window was rolled down.  There was at least one car in front of Donaldson stopped at the red light and several cars behind him. Petitioner approached Donaldson's driver-side window, pointed his gun at Donaldson, and repeatedly stated, "do you like fucking with people?"  Donaldson did not respond.  Petitioner put the gun back into his pocket and Donaldson rolled up his window.  Donaldson then gestured toward the gun in petitioner's pocket and said, "we going to get you."  At that point, petitioner pulled the still-cocked gun out of his pocket a second time, placed his finger on the trigger, and pointed it at Donaldson.  Petitioner then fired a single shot, which shattered the car window and

3

struck Donaldson in the head.  Petitioner admitted firing the shot, but testified he fired the gun

accidentally, without meaning to harm Donaldson, after gesturing with the gun toward

Donaldson.

After he fired the shot, petitioner ran back to his bicycle not knowing whether the bullet

had struck Donaldson or anyone else in the vicinity.  Meanwhile, Donaldson's car began to roll

forward into the intersection.  Terrance Hardin, who was driving a van behind Donaldson, pulled

his vehicle to the side of the road and approached Donaldson's slowly-moving car.  Seeing that

Donaldson was severely wounded, Hardin reached through the broken window and turned off the

ignition and engaged the parking brake.  According to Hardin, "folks were in a state of distress

and running."  Hardin briefly saw an individual straddling a bicycle some distance away.  As

soon as Hardin saw him, however, the individual quickly fled the scene on his bike.

Donaldson died from the gunshot wound the next morning.

Petitioner was subsequently arrested and charged with two counts of second degree

murder – one count of intentional murder and one count of depraved indifference murder.  A jury

found petitioner not guilty on the intentional murder count but guilty on the depraved

indifference murder count.

Petitioner's habeas petition challenges, inter alia, the sufficiency of the evidence upon

which petitioner was convicted of depraved indifference murder.

**DISCUSSION**

I.    Depraved Indifference Murder Under New York Law

For a defendant to be guilty of depraved indifference murder, the government must prove

beyond a reasonable doubt that, "[u]nder circumstances evincing a depraved indifference to

4

human life, he recklessly engage[d] in conduct which create[d] a grave risk of death to another person, and thereby cause[d] the death of another person.  N.Y. Penal Law § 125.25(2).

At the time of petitioner's trial in late 2003, the mens rea required to commit depraved indifference murder was recklessness.  See People v. Register, 60 N.Y.2d 270, 276 (1983), overruled by People v. Feingold, 7 N.Y.3d 288 (2006).  However, after petitioner was arrested but before his conviction became final, the New York Court of Appeals decided a series of depraved indifference murder cases that would ultimately change the landscape of New York's depraved indifference law.  Most important for purposes of this case, in People v. Suarez, 6 N.Y.3d 202 (2005), the court indicated a defendant must possess a mens rea more culpable than mere recklessness to be convicted of depraved indifference murder.

Suarez involved two separate appeals from depraved indifference murder convictions.  In the first case, the defendant stabbed the victim three times and then fled without summoning help.  The victim eventually bled to death.  Id. at 205.  In the second case, the defendant stabbed her victim once in the chest and then fled the scene, although she first called 911.  The victim died from the stab wound at the hospital.  Id. at 205-06.  Both defendants were acquitted of intentional murder but convicted of depraved indifference murder.  Id.

The Court of Appeals overturned both convictions, emphasizing that "the statutory provision that a defendant act '[u]nder circumstances evincing a depraved indifference to human life' constitutes an additional requirement of the crime – beyond mere recklessness and risk – which in turn comprises both depravity and indifference."  Id. at 214.  The court stated: "We therefore make clear that depraved indifference is best understood as an utter disregard for the value of human life – a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not."  Id.  In overturning the convictions, the court

acknowledged it was "depart[ing] slightly from the <u>Register</u> formulation" by making it clear

"that the additional requirement of depraved indifference has meaning independent of the gravity

of the risk." <u>Id</u>. at 215.

The court also noted, "[w]hen depraved indifference murder is properly understood,

'twin-count' indictments – charging both intentional homicide and depraved indifference

murder – should be rare[, and t]win-count submissions to a jury, even rarer." <u>Id</u>.  According to

the court, in most murder cases the evidence will make clear whether the alleged murderer acted

intentionally or with some other state of mind. <u>Id</u>.

Applying these newly-articulated principles to the cases on appeal, the court found the

circumstances surrounding both killings failed to support depraved indifference murder

convictions. <u>Id</u>. at 216.[2]

In his habeas petition, petitioner contends the evidence against him was insufficient to

convict him of depraved indifference murder under <u>Suarez</u>.  However, petitioner failed to raise

an insufficiency of the evidence claim in his direct appeal, so the only state court to address that

claim was the trial court, when it subsequently considered petitioner's Section 440.10 motion to

vacate the judgment of conviction.  The trial court denied petitioner's motion based on New

York Criminal Procedure Law § 440.10(2)(c), which prohibits a court from vacating a judgment

based on a ground that could have been subject to appellate review, but was not reviewed on

appeal because of defendant's unjustified failure to raise it.  The trial court also denied the claim

---

[2]     The Court of Appeals formally overturned <u>Register</u> in <u>People v. Feingold</u>, in which the
court "[said] what the Court in Suarez stopped short of saying: depraved indifference to human
life is a culpable mental state."  7 N.Y.3d at 294.  However, <u>Feingold</u> was decided after
petitioner's conviction became final and thus is not applicable to this case.

on the merits.  But because the trial court principally based its denial of petitioner's motion on a state procedural law, that claim is procedurally defaulted for purposes of habeas review.

II.      Procedural Default

Generally, federal courts are precluded from reviewing a petitioner's claim if the state court's denial of that claim rested on an adequate and independent state ground.  See Harris v. Reed, 489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 81 (1977).  A petitioner's failure to comply with a state procedural rule qualifies as an adequate and independent state ground provided that (1) the state court actually "relied on the procedural bar as an independent basis for its disposition of the case," Harris v. Reed, 489 U.S. at 261-62 (internal quotation marks omitted), and (2) the state procedural rule is "firmly established and regularly followed."  Cotto v. Herbert, 331 F.3d 217, 239-40 (2d Cir. 2003) (internal quotation marks omitted).  A claim rejected under these circumstances is deemed "procedurally defaulted."  Coleman v. Thompson, 501 U.S. 722, 731 (1991).

A federal court can only review a procedurally defaulted claim if the petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice."  Coleman v. Thompson, 501 U.S. at 750.  To establish cause for his default, petitioner must demonstrate "some objective factor external to the defense" that explains why he did not previously raise the claim.  Murray v. Carrier, 477 U.S. 478, 488 (1986); Gonzalez v. Sullivan, 934 F.2d 419, 422 (2d Cir. 1991).  "Prejudice is established by showing that 'the constitutional errors raised in the petition actually and substantially disadvantaged [petitioner's] defense so that he was denied fundamental fairness.'"  Reyes v. New York,1999 WL 1059961, at *2 (S.D.N.Y. Nov. 22, 1999) (quoting Murray v. Carrier, 477 U.S. at 494).

7

Finally, to establish a fundamental miscarriage of justice, the petitioner must demonstrate that he is "actually innocent." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001). "The miscarriage of justice exception is concerned with actual as compared to legal innocence." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quotation marks and brackets omitted).  A claim of actual innocence consequently must be supported by "new reliable evidence." <u>Shlup v. Delo</u>, 513 U.S. 298, 324 (1995).  For this reason, "claims of actual innocence are rarely successful." <u>Id</u>.

III.     Petitioner's Procedural Default Is Not Excused

Respondent objects to the Report's recommendation that petitioner's procedural default be excused.

In his Report, Judge Davison found petitioner's procedural default was excused because failing to address petitioner's insufficiency of the evidence claim on the merits would result in a fundamental miscarriage of justice.  In so finding, Judge Davison concluded that (1) an intervening change in the law can be treated as "new evidence" for purposes of excusing a procedural default, and (2) petitioner made a sufficient showing of actual innocence.  Because this Court respectfully disagrees with Judge Davison's conclusion that petitioner has sufficiently demonstrated actual innocence, the Court need not consider whether petitioner was required to produce new evidence in order to demonstrate a fundamental miscarriage of justice.

A.      Recent Second Circuit Cases

Several Second Circuit cases decided after Judge Davison issued his Report support respondent's argument that petitioner has failed to demonstrate he is actually innocent of depraved indifference murder.

8

First, Judge Davison's Report substantially relies on the Second Circuit's August 9, 2011, decision in Rivera v. Cuomo ("Rivera I"), 649 F.3d 132 (2d Cir. 2011). See Report at 43-45. In particular, Judge Davison cites Rivera I for the proposition that "[m]erely carrying a loaded and operable weapon or displaying it during 'a contentious confrontation,' is insufficient to establish the requisite level of depravity, because it 'is not so wanton, so deficient in a moral sense of concern, so devoid of regard of the life or lives of others . . . as to render a resulting death depraved indifference' [murder]." Id. at 44-45 (quoting Rivera I, 649 F.3d at 142). In Rivera I, the Second Circuit concluded that no reasonable trier of fact could have found Rivera guilty of the depraved indifference murder of his estranged wife, who was killed by a single gunshot wound to the head fired at point-blank range. The court found the evidence adduced at trial permitted the jury to reach one of only two reasonable conclusions: (1) petitioner intentionally murdered his wife; or (2) the gun accidentally discharged in the course of a struggle. Rivera I, 649 F.3d at 143. Neither conclusion evinced the "requisite degree of recklessness needed to support a conviction for depraved indifference murder." Id.

However, the Second Circuit subsequently granted respondent's request for rehearing, and ultimately reversed itself in Rivera v. Cuomo ("Rivera II"), 664 F.3d 20 (2d Cir. 2011) (per curium), cert. denied, 133 S. Ct. 195 (2012). In Rivera II – decided three months after Judge Davison issued his Report – the Second Circuit found it had not given proper deference to the state court and the jury as required by the Supreme Court's recent decision in Cavazos v. Smith, 132 S. Ct. 2 (2011), in which the Court "strongly reasserted 'the necessity of deference to state courts in § 2254(d) habeas cases.'" Rivera II, 664 F.3d at 21 (quoting Cavazos v. Smith, 132 S. Ct. at 5). Applying Cavazos, the court stated:

9

> After much reflection, we now reverse course.  Applying the law as it existed after Rivera's conviction became final in July 2004, we find that although evidence of "significantly heightened recklessness" was slim, at best, giving the state courts and the jury the utmost deference, we cannot find that the evidence was <u>so</u> completely lacking that <u>no</u> rational jury could have found Rivera guilty of depraved indifference murder.

<u>Id</u>. at 21-22 (citation omitted).[3]

Next, in <u>Gutierrez v. Smith</u>, 702 F.3d 103, 114-15 (2d Cir. 2012) – decided more than five months after Judge Davison issued his Report – the Second Circuit upheld the district court's denial of a habeas petition in which the petitioner claimed the evidence against him was insufficient to convict him of depraved indifference murder.  In the midst of a brawl outside a bar, "Gutierrez threatened a group of men with his knife and then 'accidentally stabbed'" the . . . victim."  <u>Id</u>. at 114.  Although Gutierrez's conviction became final two months before the New York Court of Appeals decided <u>Suarez</u>, the Second Circuit noted that <u>Suarez</u> "reinforce[d] [its] judgment that the jury['s] verdict . . . must survive federal review."  <u>Id</u>. at 114.  According to the court, "a reasonable jury could [have] conclude[d] that Gutierrez wielded his knife haphazardly, without intending to kill anyone, but nevertheless indifferent as to whether he inflicted fatal injuries."  <u>Id</u>. at 114-15.  The court thus concluded, "a considerable range of inference was available to the finders of fact, and we cannot say that no reasonable jury could have found that Gutierrez committed depraved indifference murder."  <u>Id</u>. at 116.

In his Report, Judge Davison also relied heavily on the district court's decision in <u>Johnson v. Bellnier</u>, 2011 WL 3235708 (E.D.N.Y. July 27, 2011).  <u>See, e.g.</u>, Report at 43-45.

---

[3]  The Court notes that Rivera's conviction became final before the New York Court of Appeals decided <u>Suarez</u>, and thus <u>Rivera II</u> is not binding on this Court to the extent New York's depraved indifference law changed between the time Rivera's conviction became final in 2004 and the <u>Suarez</u> decision in 2005.

However, the Second Circuit subsequently overturned that decision.  See Johnson v. Bellnier, 2013 WL 276075 (2d Cir. Jan. 25, 2013) (summary order).  Just like the petitioner in this case, the petitioner in Johnson was convicted of depraved indifference murder under the Register standard, but his conviction did not become final until after Suarez, but before Feingold. Consequently, the same depraved indifference law that applied in Johnson is applicable to this case.

The petitioner in Johnson shot and killed a man as he fled from Johnson and several of Johnson's friends.  Id. at 3.  Johnson fired approximately ten shots, six of which struck the victim, and two of which were fatal.  The district court granted Johnson habeas relief, finding the evidence only supported a conviction for intentional murder, not depraved indifference murder. Johnson v. Bellnier, 2011 WL 3235708, at *21 (E.D.N.Y. July 27, 2011).

The Second Circuit reversed, holding that "a rational trier of fact could have found Johnson guilty of depraved indifference murder beyond a reasonable doubt."  Johnson v. Bellnier, 2013 WL 276075, at *3.  The court noted, "Johnson fired a gun approximately ten times down a street in the dark at a fleeing victim," and therefore "[a] reasonable jury could have concluded that Johnson's actions illustrated depraved indifference not only to [the victim], but also to any other people on the street that could have been struck by his bullets."  Id.  The court thus concluded that, although the evidence may have also supported a conviction of intentional murder, "'a reasonable jury could equally have found that [Johnson] had struck out . . . without specifically intending to cause death, but with an awareness that his conduct could have deadly consequences.'"  Id. (quoting Garbutt v. Conway, 668 F.3d 79, 82 (2d Cir. 2012)).

On the same day it decided Johnson, the Second Circuit also decided Sanchez v. Lee, 2013 U.S. App. LEXIS 1759 (2d Cir. Jan. 25, 2013).  In Sanchez, the court affirmed the denial of

habeas relief to a petitioner convicted of depraved indifference murder but acquitted of intentional murder.  Sanchez had become angry at his girlfriend because she failed to arrive promptly at his mother's house as he had requested.  Id. at *2-3.  Sanchez found the "biggest knife" he could find in his mother's kitchen, put it in his pocket, and waited outside for his girlfriend to arrive.  Id. at *3.  She eventually arrived in a car with two other men.  The girlfriend and two men got out of the car, and they began arguing with Sanchez.  In the course of an ensuing scuffle, Sanchez stabbed and killed one of the men.  Id. at *3-4.

Although Sanchez was convicted under the Register standard for depraved indifference murder, his conviction did not become final until after Suarez and Feingold.  Applying the newly-articulated depraved indifference standard from Feingold, the Second Circuit held a reasonable jury could have found Sanchez guilty of depraved indifference murder beyond a reasonable doubt, because Sanchez "blindly waived" the knife at the victim; Sanchez did not deliberately stab the victim "in the heart or another location more likely to cause death"; and after the stabbing, Sanchez did not pursue the victim, but instead retreated to his mother's house, and then to a friend's house.  Id. at *8.

B.       Application of Law to Petitioner's Claim

Applying these recent Second Circuit decisions to the case at bar, the Court finds petitioner's procedural default should not be excused because petitioner has failed to "demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him'" of depraved indifference murder.  Bousley v. United States, 523 U.S. 614, 623 (1998) (quoting Schlup v. Delo, 513 U.S. at 327-28).

Based on the evidence presented at trial, a reasonable jury could certainly have convicted petitioner of depraved indifference murder under the law as it existed in New York when

12

petitioner's conviction became final.  See People v. Suarez, 6 N.Y.3d at 214-15.  Even if

petitioner did not intend to pull the trigger or shoot Donaldson, he nonetheless brandished a

loaded gun in the middle of the day near a busy intersection after pulling the gun's hammer back

to create a "hair trigger," which he knew reduced the amount of pressure required to pull the

trigger and thus made it easier to fire.  Further, petitioner walked into the middle of the street

with the loaded and cocked weapon drawn, and pointed it at Donaldson through his car window.

Petitioner then put the gun back into his pocket, only to withdraw it a second time and place his

finger on the hair trigger.  At that point, the gun fired and inflicted the fatal wound.  All the while

there were several bystanders in the immediate vicinity, including the drivers of the vehicles

stopped immediately in front of and behind Donaldson's car.  After the shot was fired, a witness

observed "folks . . . in a state of distress and running."

　　　The jury could also have reasonably inferred petitioner's "utter disregard for the value of

human life," People v. Suarez, 6 N.Y.3d at 214, from the fact that Donaldson's life was not the

only one in danger as a result of petitioner's depraved conduct.  Although Donaldson ultimately

was the unfortunate lone victim, had the gun discharged while petitioner was taking the loaded

and cocked weapon out of his pocket, brandishing it, putting it back in his pocket, and then

taking it out a second time, the bullet could easily have injured or killed one of the various

bystanders, either through a direct shot or as the result of a ricochet.

　　　Further, the grave risk created by petitioner's depraved and indifferent behavior did not

end with the shot that killed Donaldson.  Immediately after the shot – while petitioner retreated

to his bicycle and ultimately fled – Donaldson's car began to roll into the intersection, stopped

only by a courageous bystander who reached through the broken window of the moving vehicle

to turn off the ignition and engage the parking brake.  The consequences of petitioner's actions

thus created a grave risk to the bystander who helped stop the car, as well as to any other nearby pedestrians or drivers.

Of course, the evidence in this case would also have supported a conviction of intentional murder, as petitioner shot Donaldson in the head at point-blank range after having recently been involved in an altercation with him.  However, this is not a case in which a finding that petitioner was depravedly indifferent to human life is precluded by overwhelming evidence of intent to kill. As discussed above, petitioner testified he pulled the trigger unintentionally, and only a single shot was fired.  The circumstances of this case thus present one of the rare instances in which a jury was properly charged on both intentional and depraved indifference murder, and could reasonably have convicted petitioner under either theory.  See People v. Suarez, 6 N.Y.3d at 215-16.

In sum, the evidence in support of a depraved indifference murder conviction in this case is substantially stronger than the evidence in Rivera, and – at a minimum – is as strong as the evidence in Johnson, Sanchez, and Gutierrez.  Therefore, the Court finds petitioner has failed to demonstrate that "it is more likely than not that no reasonable juror would have convicted him" of depraved indifference murder, Bousley v. United States, 523 U.S. at 623 (internal quotation marks omitted), and petitioner consequently has failed to demonstrate grounds for excusing his procedural default on his insufficiency of the evidence claim.  Insofar as Judge Davison recommended the Court find otherwise, that portion of his Report is rejected.[4]

---

[4]    The Court notes that petitioner's actual innocence claim thus necessarily fails on the merits as well.  Although in Johnson and Sanchez the Second Circuit chose to "assume without deciding" that the petitioners' defaults were excused in order to dispose of those cases on the merits, Johnson, 2013 WL 276075, at *3; Sanchez, 2013 U.S. App. LEXIS 1759 at *7, this Court finds it more prudent to stop its inquiry once it has found petitioner's procedural default

IV.      Petitioner's Objections to the Report

Petitioner objects to Judge Davison's findings that petitioner was not (1) entitled to a

probable cause hearing; (2) denied his right to counsel; (3) entitled to have certain evidence

suppressed; (4) denied the right to call certain witnesses; and (5) denied effective assistance of

trial and appellate counsel.  (Doc. #37).

Petitioner's objections merely reiterate arguments he made in his petition, or are

otherwise general or conclusory, and thus are reviewed under a clearly erroneous standard.  Ortiz

v. Barkley, 558 F. Supp. 2d 444, 451 (2d Cir. 2008).  The Court has carefully reviewed the

portions of Judge Davison's Report to which petitioner objects and finds no clear error.

Moreover, the Court finds those portions of the Report to be a clear and proper statement and

application of the law.  Those portions of the Report are therefore adopted as the opinion of the

Court.[5]

---

unexcused.  See Dretke v. Haley, 541 U.S. 386, 392-93 (2004) ("an adequate and independent
state procedural disposition" is "a strong prudential reason, grounded in 'considerations of
comity and concerns for the orderly administration of criminal justice,' not to pass upon a
defaulted constitutional claim presented for federal habeas review" (quoting Francis v.
Henderson, 425 U.S. 536, 538-39 (1976)).

[5]      Petitioner also objects to Judge Davison's finding that petitioner's freestanding actual
innocence claim was rendered moot by the magistrate judge's finding that the evidence at trial
cannot support a conviction for depraved indifference murder.  Having found that petitioner
failed to demonstrate he is actually innocent of depraved indifference murder, the Court finds
this claim is without merit.

## CONCLUSION

The Court adopts in part and rejects in part Judge Davison's Report.  Accordingly, the

petition for a writ of habeas corpus is DENIED and the petition is dismissed.  The Clerk is

instructed to enter judgment accordingly and close this case.

Because petitioner has made a substantial showing of the denial of a constitutional right,

a Certificate of Appealability shall issue only with regard to the question of whether, assuming

petitioner's insufficiency claim is procedurally barred, the miscarriage of justice exception

applies.  See 28 U.S.C. § 2253; Slack v. McDaniel, 529 U.S. 473, 478 (2000) ("[W]hen the

district court denies a habeas petition on procedural grounds without reaching the prisoner's

underlying constitutional claim, a [certificate of appealability] should issue (and an appeal of the

district court's order may be taken) if the prisoner shows, at least, that jurists of reason would

find it debatable whether the petition states a valid claim of the denial of a constitutional right,

and that jurists of reason would find it debatable whether the district court was correct in its

procedural ruling.").

Dated:  March 6, 2013
        White Plains, NY


                                        SO ORDERED:

                                        _____
                                        Vincent L. Briccetti
                                        United States District Judge